## Case No. 12,560.

### SCRIBA v. INSURANCE CO. OF NORTH AMERICA.

[2 Wash. C. C. 107;[1] 1 Hall, Law J. 36.]

Circuit Court, D. Pennsylvania.    Oct. Term, 1807.

MARINE INSURANCE—ACTION FOR RETURN PREMIUM—MEMORANDUM—MISTAKE—SEAWORTHINESS.

1. Every valid contract must have a subject matter to operate upon. If insurance has been made on cargo, there must have been such a cargo, and the risk insured must have commenced.

[Cited in Waller v. Northern Assur. Co., 64 Iowa, 104, 19 N. W. 866; Schroeder v. Stock & Mutual Ins. Co., 46 Mo. 175.]

2. A memorandum endorsed on a policy, if there never was a subject upon which the policy acted, will not constitute a contract.

3. No precise form of words is required to raise up a contract of insurance; and if the words used express it, with the intention of the parties, it will be sufficient.

4. Where parties to a contract of insurance, ignorant of the facts, made an agreement by a memorandum on the policy, which was intended as an indulgence to the assured, the mistake will not prejudice either of them.

5. If a vessel was not seaworthy when the risk insured commenced, and therefore neither party bound by the contract of the insurance, the premium, if paid, could not be retained.

This was an action for a return of premium, paid upon an insurance on goods, laden or to be laden on board the Alert, at and from La Vera Cruz to New-York, with liberty to touch and trade at New-Orleans, or Havana, on the return voyage; beginning the adventure from and immediately after the loading of said goods on board the vessel, at La Vera Cruz. The policy was dated the 9th of October, 1801. This vessel sailed from New-York for La Vera Cruz, in August 1801, with a valuable cargo, which was insured in part by other underwriters, out and home; and other insurances were also effected on the return voyage; some prior, and some subsequent to that in question. The vessel, while on her voyage, was taken by a British cruiser and carried into Jamaica, where she was examined, and then discharged. She had been previously stopped, her hatches broken, the cargo examined, packages opened, &c., but nothing was taken; and all was afterwards put to rights. Between Jamaica and La Vera Cruz she suffered much injury in a gale; but she arrived at La Vera Cruz, where the governor would not permit her to land her cargo, or even to remain for the purpose of repairing and getting water. In this situation she left that port, intending to call at the first she could reach. She afterwards got to New-Orleans, from whence, on the 4th of January, 1802, the supercargo wrote to the plaintiff, informing him that he could not dis-

pose of his cargo at New-Orleans, and should therefore go to Havana and sell it. He referred to a letter of the 24th of December, (not produced at the trial, or called for,) but did not expressly mention the circumstances which had occurred at La Vera Cruz; though he speaks of the injury the vessel had suffered on her voyage thither, and states his intention to have her repaired at New-Orleans. On the 18th of January he mentions, that Havana being, as he has just understood, shut against foreigners, he shall endeavour to sell his cargo at New-Orleans. On receiving this letter of the 4th, the plaintiff went to the office of the defendants on the 11th of February, and prevailed on the defendants to endorse on the policy of the 9th of October, a memorandum, which states, "that it being represented to them by the plaintiff, that the vessel had arrived at New-Orleans, and would go to Havana, it is agreed, that in consideration of a half per cent. additional, the said vessel may go to Havana, and thence to New-York, without prejudice to the insurance. The cargo was in fact landed at New-Orleans, where a cargo of cotton was taken in, with which the vessel sailed and arrived in safety at New-York.

Meredith & Tilghman, for plaintiff, contended:

First. That the risk never attached under this policy, since no cargo was taken in at La Vera Cruz. They referred to 2 Caines, 339, being an action on a similar policy on this cargo, effected at New-York.

Second. That the case is not altered by the memorandum, which was entered under a mistake of the law, that the risk had attached.

Third. That the vessel is proved not to have been seaworthy when the risk was to commence, and of course the property, if a cargo had been taken in at La Vera Cruz, never was at the risk of the defendants. They cited 2 Marsh. Ins. 548; 1 Marsh. Ins. 228; Park, Ins. 220.

Hopkinson & Ingersoll, for defendants.

The outward voyage ended on the arrival of the vessel at La Vera Cruz, and the refusal of the governor to let her land her cargo. If the vessel arrive at her port, and is prevented from landing by a peril not insured against, the freight is earned; and consequently the voyage is ended. Morgan v. Insurance Co. of North America, 4 Dall. [4 U. S.] 455. And this was a case where the policy was in common form. The risk was to continue till the goods were landed. Park, Ins. 37, 38; 1 Marsh. 169. They admitted that it does not necessarily follow, that because the outward voyage ended then, that the risk under this policy commenced at the same time; though conversely, the latter could not commence if the former had not then ended. But, as it could not be intended that the property should ever be at the

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

risk of the insured, this is evidence of their intent to commence the latter risk when the first should end.

Second. The memorandum on the policy is a renovation of, and ratifies the original policy. It amounts to an acknowledgment that it is still a subsisting contract, and it is now too late, after the voyage has ended, to say that the risk never commenced. It is like a landlord's receiving rent after a forfeiture, which gives new life to the lease.

As to the third point, they contend that if the vessel was not seaworthy, it was known to the plaintiff when the memorandum was made; and it will not do now for him to make this a ground for demand of a return of premium.

WASHINGTON, Circuit Justice (charging jury). We doubt whether the underwriters will not, upon reflection, be pleased to know that the doctrine contended for by them on this occasion, is not founded in law. The adoption of it would lose them pounds, where they would gain dollars. This, however, forms no part of our consideration; whether it work to their benefit or injury, we have nothing to do but to pronounce the law, without considering how it may affect the parties on either side. The first point made at the bar is so extremely plain, that it is difficult to frame an argument which can throw additional light upon it. To the validity of every contract, there must not only be an agreement of parties, but there must be a subject matter for that agreement to operate upon. A policy effected upon a particular cargo, constitutes an agreement to that extent. But if no such cargo is shipped, or if the risk agreed to be insured never commences, there is not a subject matter to which this agreement can apply; and of course there never was a valid contract—one of the essential requisites to all contracts being wanted. Apply this principle to the present case. The original agreement between these parties, was for an indemnity upon goods laden, or to be laden at La Vera Cruz; the adventure or risk to commence from. and immediately after the loading of said goods on board the Alert, at La Vera Cruz. But no goods were laden at La Vera Cruz, on board of this vessel. The subject matter, therefore, of the agreement never existed, and consequently there never was, at any time, a valid and complete contract between the parties. This is plain, not only upon the words of the agreement, but upon the intention of the parties, which corresponds with their expressions; for it is absurd to suppose that either of them contemplated an insurance of goods sent from New-York to La Vera Cruz, and intended of course to be sold there. The memorandum of the 11th of February, endorsed upon the policy, has furnished the only plausible ground for an argument by the defendants' counsel. But, it is obvious that the decision upon the first point, is conclusive as to this; for if there never was a contract between the parties, as to the subject matter of this policy, this memorandum, which relates to another subject, and is merely superadded to the policy, cannot constitute a contract. The defendants' counsel, through the whole of their argument, have treated this memorandum as a new contract; and to a certain extent it is so. It is an agreement to permit the vessel to touch at Havana, on paying a half per cent. for the indulgence; but it is a very great mistake to consider it as a new contract of indemnity, the reverse of which it professes to be. It is true, that if the parties, being both fully apprized of all that had occurred, had in this memorandum agreed, in express terms, or such as plainly indicated this to be their meaning, that the original policy should attach to the cargo brought from La Vera Cruz, the cargo in such case would be considered as covered by the policy. No particular form of words was necessary, if the intention, upon a full knowledge of all material facts, was plainly expressed. But such a knowledge of facts was not possessed by the parties. Both of them, it is plain, acted under a mistake in point of law; and the defendants, (if not the plaintiff,) under an ignorance also of facts, that the policy did attach upon, and did cover the cargo brought from La Vera Cruz. But such mistake cannot prejudice either party, and the memorandum, instead of indicating a design in the parties to cover, by a new agreement, this cargo, by the original policy, is plainly inapplicable to that subject; is confined to a new one, or subsidiary altogether to the original agreement, which never at any moment took effect. The parties treated the first agreement, on the 11th of February, as a subsisting contract; but this could not make it a valid one, if in point of law, it never had existence.

The case put at the bar, of a forfeited lease, and subsequent receipt of rent by the landlord, is good law; but there the contract was once valid, though forfeited at the option of the landlord. Yet it was in his power to waive the forfeiture if he pleased; and the receipt of rent, he being fully apprized of all circumstances, amounts to an implied waiver of it. A case of insurance may be mentioned. apposite to this. If the risk in this case had once commenced, but the right to claim an indemnity in case a loss had happened, had been forfeited by a deviation or the like, the defendants being informed of the fact. might have waived the forfeiture, and possibly a memorandum of this kind might have had such an effect; certainly if such had appeared to have been their intention, it might have been so construed. But, if, as in this case, there never was at any time a valid contract, no implied ratification could make it a subsisting contract in this case. any more than payment of rent for white acre, where only black acre had been leased, would constitute a lease for white acre. The truth is, that this cargo never was covered, any more than if the policy had been made, and specifically, upon a cargo of rum. and a cargo of cocoa had been taken; no posterior

SCRIBNER (Case No. 12,561)                    [21 Fed. Cas. page 876]

act therefore could cover it, but a new contract going to that extent.

As to the third point, little need be said about it, as the plaintiff is clearly entitled to recover upon the first ground. But if it were necessary to decide it, it would be sufficient to say, that if in your opinion the vessel was not seaworthy at the time the risk commenced, if it ever had commenced, neither party was bound; and of course the defendant could not retain the premium in case of safe arrival; nor could the plaintiff have recovered a loss, if one had occurred.

Verdict for plaintiff.