# Bower, Appellant, *v.* Walker.

*Appeals—Assignments of error—Evidence—Practice, Supreme Court—Rule 31.*

An assignment of error to the exclusion of a paper violates Rule 31, where the assignment fails to set out either the offer or the objection, and does not contain a copy of the paper excluded.

*Contract—Computation of interest—Evidence—Equity—Mutual accounts.*

In an equity suit where the issue turns upon the proper method of computing interest under a contract in writing, a statement of account made seven years prior to the date of the agreement, and referred to in the agreement as showing that to a certain extent the arrangement contemplated by the agreement had been completed, is not admissible as evidence of the proper method of computing interest under the written agreement.

On a bill in equity to compel the redelivery of stock held as collateral where it appears that the defendant had made advances to the plaintiffs under a written agreement, by which the dividends from the stock were to discharge the debt in full with interest at six per cent per annum, and the agreement does not state how interest shall be computed, but the defendant applies the dividends as received to the interest which had accrued to date, and the balance in reduction of principal, such method of computation will be adopted by the court if it appears that for a period of nine years, accounts were rendered by the defendant to the plaintiffs based on such method, that the plaintiffs never objected, but secured an extension of the agreement, after which they continued to accept similar statements of account without objection. Such accounts cannot be considered as making up a mutual running account, inasmuch as there is no mutual indebtedness giving rise to mutual demands, with a right of action to each party against the other.

A construction placed upon a contract by the parties will be followed by the courts.

Where money is paid upon a debt, it is to be applied first to the interest, if any in arrears, and then to the extinguishment of the principal.

Argued Jan. 15, 1908.  Appeal, No. 163, Jan. T., 1907, by plaintiffs, from decree of C. P. No. 5, Phila. Co., Dec. T., 1904, No. 4,233, dismissing bill in equity in case of George R. Bower et al., Administrators of Henry Bower, deceased, v. Anne M. Walker, surviving partner of the firm of Powers &

Weightman, and executrix of the will of William Weightman, deceased.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Bill in equity to compel redelivery of shares of stock.

RALSTON, J., filed the following opinion in which the facts appear:

Henry Bower & Son failed in 1887 owing $36,048.05 to Weightman and large sums to various other creditors.  Some of these creditors held as security for their debts shares of stock of the Ammonia Company of Philadelphia and the Kalion Chemical Company.  Weightman agreed to advance the money necessary to enable Bower & Son to effect a compromise with their creditors, and in pursuance of this plan he purchased all the shares of the Ammonia Company and Bower transferred to him all the shares of the Kalion Company, Weightman agreeing to hold them until the dividends should be sufficient to reimburse him.  After the death of Henry Bower the Bower interests entered into a written agreement with Weightman, dated May 28, 1896, the terms of which are as follows:

Weightman will permit and allow all dividends paid to him on his holdings of the stock of the Ammonia Company to be applied, first, against the original debt of $36,048.05 until the dividends thus paid shall discharge the debt in full with interest at 6% per annum, which has been already so arranged and completed; second, and will allow all further dividends on the stock of the Ammonia Company and the Kalion Company paid him thereafter to be credited against the sums advanced by him until the said advances shall in this manner be paid with interest at 6% per annum; and third, will allow the dividends to be credited against the cost of the stock.

When the dividends on all the stocks shall equal in sum the amount of the original indebtedness, added to the sums advanced, the sums paid for the stocks and the sums advanced in consideration of which Bower transferred to him the Kalion stock, together with interest on all at 6% per annum, then Weightman is to have (hand) back the stock.

If the dividends shall not within five years amount to a sum equal to the said several amounts, aggregating $579,412.75,

and such further sums as it may be necessary to advance, together with interest thereon at 6%, then Weightman may sell so much of the stock as may be necessary to reimburse and pay him any and all balance of the said $579,412.75, with interest, and also any additions thereto remaining unpaid.

Nothing is to preclude the Bowers from making full payment at any time of the total amount owing, with interest, and thereupon becoming entitled to a transfer of the stocks.

Money was advanced from time to time and dividends were received. At the end of each year Weightman, by his accountant Hoopes, rendered an account to George R. Bower, administrator of Henry Bower. In this account the Bowers were charged with the principal debt and such advances as were made, together with interest from the date of each advance, and were credited with the dividends received, with interest from the date of each payment. The payments were then deducted from the debt and a balance struck. The account of the ensuing year began with this balance and continued as above described. In each year down to January 1, 1902, the dividends were greater than the interest upon the debt, so that the principal debt was reduced until January 1, 1902, when the account showed a balance to be due of $178,991.47. Thereafter no payments were made, and the interest at the end of each year was added to the principal debt.

On May 29, 1901, the agreement was extended for three years, and on June 15, 1904, was further extended for three years, or until May 28, 1907. Both extensions were signed by all the parties to the original agreement.

On January 3, 1905, the Bowers interests made a tender to Anne M. Walker, the executrix of Weightman, of $76,722.09, the amount they claimed to be due, and demanded a return of the stocks. This was refused, the executrix claiming that according to the accounts the amount due on December 31, 1904, was $213,668.21.

The Bowers interests are the complainants in the bill which prays that Anne M. Walker, the executrix of Weightman, be compelled to receive $76,722 and assign the stocks held by her under the agreement.

The contention of the complainants is that under the agree-

ment and its extension no interest was payable to Weightman until the accounts were settled, which might be : (1) at any time when the dividends, with interest, should equal the debt, with interest ; (2) at the expiration of the agreement on May 28, 1907 ; or, (3) at such time as the complainants were ready to pay the debt, which was on December 31, 1904. They therefore claim that the account should be stated as of December 31, 1904, by charging them with the principal debt and advances, with interest from the date of each advance, and giving them credit for the dividends received, with interest from the date of each payment.

The defendant, on the other hand, contends that as each dividend was received Weightman had a right to first apply it to the payment of the interest then due, and, if anything was left, to apply it to a reduction of the principal.

The question is, was Weightman under the agreement entitled to interest from time to time, or was he bound to wait for his interest until the expiration of the agreement, allowing the Bowers interest upon all their payments until that time ? There is nothing in the agreement to indicate how the payments are to be applied, and in the absence of any agreement between the parties the ordinary rule is to first pay the interest and deduct the balance from the principal. " In all cases of partial payment it is the law which makes the application. . . . The rule as to partial payments is well settled . . . . the application is to be made first to the interest then due and the balance to the reduction of the principal : " SHARSWOOD, C. J., in Roberts's Appeal, 92 Pa. 407. " Where money is paid generally upon a debt, the obvious rule is to apply it first to the interest, if any, in arrears, and then to the extinguishment of the principal : " PAXSON, J., in Moore v. Kiff, 78 Pa. 96. To hold that Weightman was not entitled to any interest until the expiration of eleven years (the period of the agreement as extended), would be contrary to the ordinary rule as above stated. Nor did this seem to be the understanding of the parties, as accounts were rendered each year for more than eight years without objection or any suggestion that they should be kept differently. On January 2, 1902, Hoopes (for Weightman) wrote to George R. Bower, treasurer of the Ammonia Company (and the accounts are kept in the names of the

Ammonia Company and the Kalion Chemical Company), inclosing the account to December 31, 1901, and asking him to examine and confirm it, so that they might know that it was correct and agreed with his figures. To which George R. Bower replied : " I find all correct and agreeing with my figures." Subsequently, on May 22, 1901, George R. Bower, apparently in behalf of all in interest, in a letter to Hoopes, stated " that on January 1, 1901, the balance due on the accounts were: On Kalion Company's account, $120,345.57; on Ammonia Company's account, $61,120.30, a total of $181.465.87," and requested an extension of the agreement for three or four years. A week later, May 29, 1901, the agreement was extended, all the parties signing it. It was never suggested that the accounts should have been kept in any other way, or that Weightman was not entitled to interest from time to time until January, 1905. There is no provision in the agreement relating to the application of partial payments, and I can see no reason to depart from the ordinary rule that payments are to be applied to interest then due, which seems to have been the understanding of the parties, acted upon by them for nearly nine years.

It is urged by the complainants that they have been charged compound interest, but this is not the case, because in each year down to January 1, 1902, the dividends exceeded the interest and the principal was reduced. On that date the account showed a balance due of $178,991.47. After that date no dividends were received, and at the end of each year the interest was added to the principal and carried over as the balance for the next year. Thus, in the account as rendered on December 31, 1904, for $213,668.21, there was a slight compounding of interest. I should take the balance due January 1, 1902, viz.: $178,991.47, and add to it simple interest to the date of settlement, which would make the balance due January 1, 1905, $211,209.93.

Being of the opinion that the amount tendered, viz.: $76,722.09, was not the amount due, but that the amount of the debt was as above stated, the defendant was not obliged to assign over the stocks, and the plaintiffs are not entitled to the relief prayed for.

The bill is therefore dismissed with costs.

*Errors assigned* were as follows:

(1) The trial judge erred in sustaining the defendants' objection to and refusing to admit in evidence the settlement of October 4, 1889.   (20) Decree dismissing the bill.

*Francis K. Carey* and *Alex. Simpson, Jr.,* with them *Townsend, Elliott & Townsend,* for appellants.—The agreement of May 28, 1896, provided for the payment of the principal in five years, with simple interest at six per cent per annum and this agreement was extended without alteration to the year 1907.   It is a well-established principle of law that, in the absence of an express stipulation to the contrary, no interest is due until the maturity of the principal: Roberts v. Morsell, 10 Md. 32; Perley, Law of Int. p. 9.; Brooks v. Holland, 21 Conn. 388; Ramsdell v. Hulett, 50 Kans. 440 (31 Pac. Repr. 1092); Catlin v. Lyman, 16 Vt. 44; Sparks v. Garrigues, 1 Binn. 152.

A stipulation for interest at a specified rate per annum does not import a contract to pay interest annually, the term employed affording a measure for the computation of interest: Motsinger v. Miller, 59 Kans. 573 (53 Pac. Repr. 869); Ramsdell v. Hulett, 50 Kans. 440 (31 Pac. Repr. 1092); Koehring v. Muemminghoff, 61 Mo. 403; Catlin v. Lyman, 16 Vt. 44; Cooper v. Wright, 23 N. J. L. 200; Tanner v. Dundee Land Investment Co., 12 Fed. Repr. 646.

The agreement provides expressly for the method of accounting to be adopted.

The accounts were mutual running accounts: Dunn v. Estate of Fleming, 73 Wis. 545 (41 N. W. Repr. 707); Tucker v. Quimby, 37 Iowa, 17; Loventhal v. Morris, 103 Ala. 332 (15 So. Repr. 672); McFarland v. O'Neil, 155 Pa. 260; Edmondstone v. Thomson, 15 Wend. 554; Stewart's App., 105 Pa. 307; Hudson v. Hudson, 21 Pa. Superior Ct. 92; Adams v. Carroll, 85 Pa. 209; Chambers v. Marks, 25 Pa. 296.

The method adopted in those accounts cannot operate to estop us, because it necessarily results in usury whenever the amounts received in any one year is less than the amounts paid out: Phila. & Reading R. R. Co. v. Smith, 105 Pa. 195; Young v. Hill, 67 N. Y. 162; Stokely v. Thompson, 34 Pa. 210; Roberts's App., 92 Pa. 407.

The yearly accounts thus sent and received by the administrator cannot operate to estop the parties beneficially interested.

The only effect of receiving and not promptly disavowing an account stated, is to put the burden of proof of falsifying it upon the person receiving it: Jones v. Dunn, 3 W. & S. 109; Tennent v. Dewess, 7 Pa. 305; Sergeant's Executors v. Ewing, 30 Pa. 75; Verrier v. Guilliou, 97 Pa. 63; Peirce v. Peirce, 199 Pa. 4.

*Hampton L. Carson* and *John G. Johnson,* for appellees.— There was nothing in the contract which took the partial payments out of the usual rule of appropriation of payments, viz.: (1) in liquidation of interest up to date of each partial payment, and (2) to the extent of any balance towards payment of principal: Squires v. Hamot, 8 Watts & Sergeant, 17; Moore v. Kiff, 78 Pa. 96; Lowber v. Smith, 7 Pa. 381; Stewart's App., 105 Pa. 307; Mattern v. McDivitt, 113 Pa. 402; Hay v. Kramer, 2 Watts & Sergeant, 137; Ingram v. Sherard, 17 S. & R. 347.

Apart from any element of estoppel, the cotemporaneous construction demonstrates the understanding by the parties of their contract as one governed by the ordinary Pennsylvania rule of partial payment appropriations: Colder v. Weaver, 7 Watts, 466; Pratt v. Campbell, 24 Pa. 184; Alexander's App., 20 W. N. C. 283; Huckestein v. Incline Plane Co., 173 Pa. 169.

The annual statements accepted from time to time gave them the status of accounts stated, and the extension, given upon the basis of such acceptance, operated as an estoppel: Shillingford v. Good, 95 Pa. 25.

Opinion by Mr. Justice Potter, March 2, 1908:

The controversy in this case is as to the proper method of computing interest, under the terms of an article of agreement, entered into upon May 28, 1896, between the firm of Powers & Weightman and the firm of Henry Bower & Son. When the agreement was made Henry Bower had died, and his surviving partner, his heirs and the administrator of his estate, were made parties to the contract. After reciting an indebtedness of Bower & Son to Weightman, and the purchase by him (manifestly for the benefit of Bower & Son) of certain

stocks in the Ammonia Company of Philadelphia, and the Kalion Chemical Company, which indebtedness, together with the amounts paid for the purchase of the stocks, reached an aggregate of $597,412.75, the agreement provided that, as received by Weightman, the dividends upon the stocks should be applied to the discharge of the indebtedness, and the repayment of the sums advanced by him for the purchase of the stocks ; and that when the dividends so received by Weightman on such stocks, should equal in amount the indebtedness and the moneys advanced, " together with interest on all at 6% per annum," the stocks should be handed over and transferred to Bower's estate, or to such person as his legal representatives might direct. It further provided that if such dividends should not within five years equal the amount of the indebtedness and advances, with interest, Weightman should have the right to sell the stocks, and reimburse himself. It was also provided that Bower's estate and William H. Bower might at any time during the continuance of the agreement, by paying the balance of indebtedness then due, with interest, become entitled to a transfer of the stocks to them. By subsequent agreements of the parties, the terms of the contract were extended for three years to May 28, 1904, and again for three years to May 28, 1907.

After the execution of the agreement, statements were rendered annually by Powers & Weightman to George R. Bower, who was a son and administrator of Henry Bower, showing the status of the account. The statements of 1899, 1900, 1901, 1902 and 1903 were in evidence. On May 22, 1901, George R. Bower wrote to the representative of Mr. Weightman, requesting an extension of the agreement, and stating the balance due January 1, 1901, in an amount which corresponded with the statement rendered by Powers & Weightman for the year 1900. When the statement for 1901 was rendered, George R. Bower, upon January 2, 1902, acknowledged its receipt, saying " I find all correct and agreeing with my figures." During all these years in which statements were rendered, no objection was at any time made to the method of calculation by which the balance shown to be due by the Powers & Weightman statements, was ascertained.

On December 21, 1904, George R. Bower on behalf of all

the parties interested with him, tendered to Anne E. Walker, surviving partner of the firm of Powers & Weightman, and executrix of William Weightman, the sum of $76,722.09, in full payment of the balance due by them, and demanded the transfer of the stocks under the terms of the agreement. The tender was not accepted, and Mrs. Walker declined to transfer the stocks, claiming that a much larger balance ($213,668.21) was due. Thereupon appellants, as children and next of kin of Henry Bower, and his administrator, filed this bill in equity to compel Mrs. Walker to transfer the stocks upon payment by them of the sum of $76,722.09. After hearing, the court below dismissed the bill on the ground that the amount due under the agreement was in excess of the sum tendered.

Upon the trial complainants offered in evidence, for the purpose of showing the method of accounting then pursued, a copy of a settlement made in 1889, between Powers & Weightman and the Ammonia Company of Philadelphia. This was objected to as being long prior to the date of the agreement which was the basis of the suit. The objection was sustained, and the offer excluded. The exclusion of this paper is the ground of the first assignment of error. That assignment is in plain disregard of our Rule 31, in that it fails to set out either the offer, or the objection, and does not contain a copy of the paper excluded.

We think, however, the paper purporting to contain the settlement was properly rejected, not only upon the ground stated in the objection, but because the alleged reference to it in the agreement cannot properly be regarded as an adoption, for use under the present agreement, of the method of computing interest used in the former settlement. It was rather an acknowledgment of the fact that to a certain extent the arrangement contemplated had been completed.

The remaining specifications of error may all be considered under the twentieth assignment, which alleges error in the decree dismissing the bill.

According to the method of computation adopted by the defendant, as shown by the accounts rendered, when dividends upon the stocks were received, the interest which had accrued to that date upon the entire sum, was deducted, and the balance was applied in reduction of the principal. Complainants,

on the other hand, claimed that, in making up the statement, interest should be calculated and charged on the indebtedness up to the time of final settlement, and that interest should be allowed upon each dividend, from the date when it was paid up to the same time, and credited to the plaintiffs; and that the difference between the respective totals thus made up would show the correct balance then due. The court below held that defendant's method was the proper and legal one, under the terms of the agreement, and further suggested that this "seems to have been the understanding of the parties, acted upon by them for nearly nine years."

The precise question here involved does not seem to have occurred to the parties when the agreement was drawn, for its terms throw no light upon the exact point in dispute. Admittedly, interest was to be paid at the rate of six per cent per annum upon the entire sum advanced for the benefit of Bower & Son, but as to the method by which the interest was to be computed, in view of the partial payments, the agreement is silent. A large sum of money was involved, upon which frequent partial payments were made. The interest did not of course bear interest, while the principal sum did. If the plaintiffs had the right to insist upon the entire amount of the payments being applied in reduction of the principal, ignoring altogether the accruing interest, until the date of the final payment, it would make a very great difference in the final result. This right they claimed in the court below, and insist upon here. It is, they admit, not the usual method of accounting, but they seek to justify its adoption, on the ground that it was the method pursued between the same parties upon a prior occasion, to which reference is made in the agreement, and for the further reason that as they contend, the account may be regarded as a mutual running account between the parties, and, therefore, is to be considered as an exception to the general rule. It is somewhat startling to find that between the two methods of application of the payments, such a large difference will result. It will be noted, upon an examination of the agreement, that the transaction did not constitute a loan for any fixed period. It was not a loan for five years, but an engagement by Mr. Weightman that, during that time, all dividends received by him upon the stocks should be appropriated

to the payment of the indebtedness and the amounts advanced for Bower & Son. Payment was to be made by the application thereto of the dividends as received. If the dividends had been large enough to pay off everything due to Mr. Weightman within two years, or three years, they would, under the agreement, have been so applied, and both debt and interest extinguished. The term of five years was inserted as a limitation only upon the time during which this arrangement was to stand. In addition, the right of Bower & Son to make full payment of the entire amount of the advances at any time was preserved. So that, had they been so disposed, the entire sum due and owing to Mr. Weightman might have been paid off within the first year. Under any such termination of the arrangement, interest of course, would have been calculated only until the time of payment of principal, and must have been then paid. It is apparent, therefore, that the loan was to be for such time only as would permit of payment of the amount loaned, from the dividends, not exceeding five years, and that each dividend was to be regarded as an extinguishment of that much of the debt and interest. To be sure, this is not conclusive as to the right to deduct the interest due upon the whole debt from the amount of any payment, before applying the balance upon the principal sum, but it does, we think, sustain the right to deduct at least the amount due upon the proportion canceled. Admitting, however, that under the terms of the agreement, the method of application of the payments, whether entirely to reduction of principal or first to interest then due, and then the balance to principal, was left uncertain, we are strongly impressed by the construction which was manifestly placed upon the agreement in this respect by the conduct of the parties in the course of their dealings with each other. As has already been stated accounts were rendered at regular intervals by the defendant to the plaintiffs, showing the balance which it was claimed was due, and the amounts thus stated were ascertained in the calculation by the usual rule for partial payments, under which the payments are applied in the first place to the discharge of the interest then due, and the surplus goes to the reduction of the principal. No objection to this method seems to have been made by the plaintiffs, although it was continued through a

series of years. Indeed, the definite balance as stated to be due was, it seems, upon each occasion accepted as correct, and thus may fairly be regarded as constituting an account stated at each interval. Of course, the mere rendering of an account did not make it an account stated, but the fact that it was received without objection and that no correction or impeachment of it in any way was suggested within a reasonable time goes far to sustain it as such. If a mistake in the figures, or a clerical error, were here alleged, we do not say but that it might very properly be corrected. But the effort now is to repudiate entirely the method of accounting and the manner of the application of the payments which was adopted and followed by the defendant for years, and which was seemingly accepted without question by the plaintiff as proper, and acquiesced in during all that time. Whatever may be said as to the uncertainty in which the plan of computing interest was originally left by the terms of the agreement, we are convinced that the method followed unquestioningly by the parties for so long a period should not now be disturbed. The law is well settled that the construction placed upon a contract by the parties will be followed by the courts. " If a contract is ambiguous in meaning the practical construction put upon it by the parties thereto is of great weight, even though the contract is in writing, and ordinarily is controlling : " 2 Page on Contracts, sec. 1126. And in People's Natural Gas Co. v. Wire Co., 155 Pa. 22, this court said : " When we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it." And in Sherman v. Consolidated Dental Mfg. Co., 202 Pa. 446, the present chief justice said : " The parties themselves thus gave a practical demonstration of their mutual understanding of the agreement, which neither one can now be allowed successfully to dispute." This language applies most appropriately to the transactions of the parties in the present instance.

It is suggested, however, by counsel for appellants that the acts or omissions of George R. Bower, in accepting the statements of the accounts and in approving them, would not bind the other plaintiffs. But in answer to this we think it is sufficient to say, that in the fifth and sixth paragraphs of the bill

filed it is admitted that plaintiffs had notice of the accounts rendered, and that George R. Bower acted for them in receiving notice, and in making the tender for them of the amount admitted to be due to Mrs. Walker, and in making the demand upon her for the return of the stocks.   Furthermore, they seem to have ratified the letter of May 22, 1901, written by George R. Bower, asking for an extension of the agreement.   This letter contains an express admission of the correctness of the account, as rendered up until that time.   And when in response to that letter the time was extended for their accommodation, they all signed the extension agreement.   If the method of accounting adopted and set forth by the defendant during all these years, when the statements were being frequently rendered, was not acceptable to the plaintiffs or their representatives, the time to make the objection known was upon the rendition of some one or more of the accounts.

Nor do we see any sufficient ground for the contention that the account, as rendered in this case, can be properly termed a mutual running account.   To make it such, there must have been mutual indebtedness, giving rise to mutual demands, with a right of action to each party against the other.   Here the indebtedness was all upon one side.   Powers & Weightman were creditors, and Bower & Son were debtors, and that is the only relation ever shown to have been established between the parties.   The fact that credits were entered upon the account from time to time because of payments, did not render the account mutual; that only tended to reduce the amount of the indebtedness.   Therefore we can see no merit in the suggestion that this account should be considered a mutual running account, with the effect, as is contended, of making it an exception to the general rule, that where money is to be paid upon a debt it is to be applied first to the interest, if any, in arrears, and then to the extinguishment of the principal.

The assignments of error are overruled, the decree of the court below is affirmed, and this appeal is dismissed at the cost of the appellants.