### OHIO SAVINGS BANK & TRUST CO. v. WILLYS CORPORATION et al.

(Circuit Court of Appeals, Second Circuit. June 8, 1925.)

No. 295.

1. **Corporations ⬯565(2)—Creditors entitled to receive interest on claims accruing during receivership, before any surplus paid to corporation.**

In equity receivership proceeding, creditors, after payment of principal of all claims, are entitled to receive interest accruing on unpaid balances of such claims during receivership, before corporation receives any surplus in hands of receivers.

2. **Payment ⬯42—In federal court, payment applied first on interest, and balance on principal.**

It is the rule in federal courts that a creditor shall calculate interest whenever payment is made, and apply payment first on interest, and, if balance remains, then on principal.

3. **Receivers ⬯163—Rule against allowance of interest, where property of insolvent is in custodia legis, does not prevent allowance of interest during receivership.**

As general rule, after property of insolvent is in custodia legis, interest thereafter accruing is not allowed on debts payable out of funds realized from sale of property; but such rule does not prevent running of interest on unpaid balances of claims during receivership.

4. **Receivers ⬯163—Order directing manner of calculating interest on general claims allowed during receivership held proper.**

In receivership proceeding, where dividends equivalent to 100 per cent. of all allowed claims had been paid to creditors, and surplus remained in hands of receivers sufficient to pay interest accruing on such claims during receivership, order directing that such interest should be computed, as if dividend payments had been made on account only, and applied first in payment of interest, then on principal, *held* proper.

5. **Receivers ⬯163—Order directing receiver's payment of dividend on claims held not appropriation of payment, as between principal and interest.**

Court's direction to receiver to pay dividend on adjudicated claims *held* not an appropriation of such dividend payments, as between principal and interest due on such claims.

Appeal from the District Court of the United States for the Southern District of New York.

Receivership proceeding by the Ohio Savings Bank & Trust Company against the Willys Corporation. From an order instructing the receiver to calculate interest on general claims allowed against the estate, in a particular manner, the Willys Corporation and others appeal. Order affirmed.

It is an appeal from an order dated June 3, 1924, entered in said court in an equity receivership proceeding, instructing the receiver to calculate interest upon general claims allowed against the estate, in accordance with a certain method hereinafter set forth. The plaintiff herein, the Ohio Savings Bank & Trust Company, of the city of Toledo, in the state of Ohio, claiming to be a creditor of the defendant in the sum of $100,213.90, with interest thereon from January 10, 1921, secured the appointment of the receivers. Its claim was based on a note given by defendant to plaintiff in the amount stated.

The defendant is engaged in the business of manufacturing electric starting and lighting systems for automobiles and various other component parts thereof. It has an authorized capitalization of 5,000,000 shares of common stock of no par value, $15,000,-000 par value of 8 per cent. cumulative first preferred stock, and $10,000,000 of 7 per cent. cumulative second preferred stock; the preferred stock having a par value of $100 each. The common stock issued amounts to 4,450,000 shares. The first preferred stock issued amounts to about 150,000 shares. The second preferred stock issued amounts to about 77,000 shares. In asking for the appointment of receivers it was alleged upon information and belief that the indebtedness existing against defendant aggregated not less than $10,000,000 and not in excess of $14,000,000. The court was asked to appoint receivers and authorize them to continue the operation of defendant's business in such manner and to such extent as the court might direct, and to preserve and protect the property and assets of defendant from being sacrificed. The defendant filed an answer, in which it admitted the material allegations of the bill and consented to the appointment of the receivers.

Receivers of Willys Corporation were appointed by District Courts of the United States in the Southern District of New York, in the Northern District of Ohio, Western Division, in the Northern District of New

York, and in the District of New Jersey, upon creditors' bills brought by the same plaintiff in each district. The appeal is taken, not only by the defendant corporation, but also by the Landover Holding Corporation, and also by the protective committee for the first preferred stockholders of the defendant.

The Landover Holding Corporation is a corporation formed under a plan of readjustment approved by the various District Courts having to do with the receivership proceedings, and pursuant to such plan became the holder of over 90 per cent. of the first preferred stock of the defendant Willys Corporation. It thereby became entitled to receive any funds of the estate after the payment of all claims. It became a guarantor of the debts involved herein. The Landover Holding Corporation is interested, in that it had, by letter dated August 1, 1923, guaranteed the payment of claims which had been presented and allowed up to a certain date; and the first preferred stockholders' protective committee are interested, in that the first preferred stockholders are entitled to receive any surplus remaining in the estate after the payment of debts.

The Willys Corporation is a corporation organized under the laws of the state of Delaware. Prior to November 25, 1920, it owned manufacturing plants and other property situated in Toledo, in the state of Ohio, Elizabeth, in the state of New Jersey, and in Poughkeepsie and Syracuse, in the state of New York. It also owned certain securities which were held in the city of New York. The assets of the Willys Corporation, measured by the amount realized from the sale of such assets as have been sold and by the estimated value of unsold assets, and including the amount of a tax refund (about $325,000) claimed to be due from the United States, and the amount of a guaranty ($500,000) made by purchasers of Willys Overland Company common stock from the receivers, amount to about $20,000,000.

Claims against the defendant were filed with the receivers, aggregating about $28,600,000 face amount. These were adjudicated at substantially $15,000,000, including interest to April 1, 1922. Receivers having been appointed in four of the District Courts of the United States, as stated, orders were issued in each of those courts which provided in substance that a creditor might file his claim in any district, but only in one, and that a claim allowed in any one district was deemed allowed in any other, and that the receivers in the different districts should co-operate in making an equal distribution of the estate in accordance with the general list of claims in all districts.

All claims so filed, with an important exception hereinafter referred to in the opinion of the court, have been adjudicated, and each court has certified to the other courts the claims allowed by it as proper claims against the estate. Most of the property of defendant has been sold pursuant to orders of the various courts. Three dividends have been paid to creditors whose claims had been thus allowed (irrespective of the court by which the claims were adjudicated), pursuant to orders of the District Court for the Northern District of Ohio, Western Division, and two dividends pursuant to orders of the District Court for the Southern District of New York. The aggregate of these dividends is equal in amount to the principal amount of the claims as allowed.

This appeal involves the legality of an order instructing the receiver in an equity receivership as to the application to be made of the dividend payments, being payments upon interest-bearing debts. The court below instructed that such payments should be applied first to the payment of the interest and then toward the discharge of the principal. From this order the Willys Corporation, the debtor, and the protective committee for the first preferred stockholders of that corporation, together with the Landover Holding Corporation, have appealed. They insist that the order referred to is erroneous in law, claiming that such payments should be applied to the reduction of the face amount of the principal of the claims as allowed, and that the interest which accumulated during the receivership should be paid last. The preferred lien claims have been allowed against the estate and paid in full, and are not involved in this appeal, which deals only with general unsecured claims.

Cotton & Franklin, of New York City (H. F. Reindel, of New York City, of counsel), for appellants.

David Hunter Miller, of New York City, for receiver.

Rushmore, Bisbee & Stern, of New York City, for bank creditors' committee.

White & Case, of New York City (David Hunter Miller, Eldon Bisbee, and Joseph M. Hartfield, all of New York City, of counsel), for merchandise and construction creditors' committee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question which this appeal brings into this court is an interesting and important one. It involves the proper method to be pursued in making payment of debts of an estate being administered by receivers appointed in an equity proceeding. The receiver appointed in the Southern District of New York, Francis G. Caffey, filed in the United States District Court for that District, on April 12, 1924, a petition asking the instructions of the court. Its material portions are as follows:

"Dividends of 100 per cent. of the face amount of the claims of general creditors allowed herein have been paid. The aggregate amount of cash and securities held by the receivers in this cause in the Northern district of Ohio, Western division, and in the district of New Jersey, and by myself as receiver in this district, is at least $2,600,000. There is no doubt that these funds will be sufficient to pay, either in whole or in part, the amount which remains due to general creditors herein by reason of the running of interest. The exact amount which will be available for this purpose cannot now be determined, however, because of the claim of the United States of America which is pending in New Jersey. * * *

"In addition to the assets of this estate above mentioned, the security for the benefit of creditors to the extent of $500,000, mentioned in the second report and accounting herein, verified October 17, 1923, is still held by me as receiver. The parties in interest in this cause do not agree as to the method which should be followed in calculating the amounts which remain due to creditors by reason of the running of interest on their allowed claims. It is essential in the administration of this estate that an adjudication of the court as to such method and as to the amounts which remain due to creditors should be had before any further distribution to creditors is made.

"Accordingly I respectfully pray the court that such an adjudication be made, and that such other and further instructions be given me as receiver and such other and further relief be granted as to the court may seem just."

It resulted in the following order, entered on June 3, 1924:

"(1) The receiver herein, in calculating the interest upon proved and allowed claims, is hereby instructed to adopt the method described as method 2 in the affidavit of H. L. Green annexed to said petition of Fran-

8 F.(2d)—30

cis G. Caffey, receiver, verified April 12, 1924.

"(2) The respective amounts remaining due to the respective creditors having adjudicated claims herein are those set forth in the schedule annexed to said affidavit of said Green under the heading 'Method 2,' and said amounts so due to said creditors are amounts of principal due, with interest from March 15, 1924, and, except as noted in said schedule, at 6 per centum per annum.

"(3) Said amounts so adjudicated to be due to creditors herein are also set forth in the schedule annexed to this order, the figures whereof are the same as those in the above mentioned schedule annexed to said affidavit of said H. L. Green.

"(4) The claim of Chase National Bank, allowed herein in the sum of $1,687.20 by order dated July 19, 1922, has been wholly paid, and nothing remains due thereon, either by way of principal or by way of interest."

It is from this order that the appeal is taken. The total amount of the claims allowed against the estate aggregate $15,021,748.57.

At the time the petition for instructions was filed, three claims, aggregating $37,957.26, were pending unadjudicated in the District Court of New Jersey. There was also pending in the same court a disputed claim of the United States arising out of war contracts, and no adjudication thereof has yet been had. This claim the comptroller of the receiver in his sworn statement declares involves about $1,500,000, which, with interest, may amount to $2,000,000; and he also stated that "sufficient funds have been set aside by the receivers in New Jersey to meet that claim if and to the extent to which the same shall be finally allowed."

Five dividends to general creditors, aggregating 100 per cent. of the amount of the claims as allowed, have been paid. The orders allowing the claims recited that they were allowed, with interest from April 1, 1922, which was the last day for filing claims against the estate, some at the rate of 6 per cent. per annum, and others at the rate of 7 per cent. per annum, "if interest is paid upon other general claims." The pertinent provisions of the orders directing payment of the dividends are as follows:

"Orders, dated November 8, 1922, December 27, 1922, and April 24, 1923, respectively, of the District Court for the Northern District of Ohio: (1) 'That the receivers

forthwith pay a dividend of 40 per cent. upon the adjudicated claims against the defendant Willys Corporation, allowed in all districts, as set forth in the report of the special master hereby approved and confirmed.' (2) 'That the receivers forthwith pay a dividend of 17 per cent. upon the adjudicated claims against the defendant Willys Corporation, allowed in all districts, as set forth in said report of the special master.' (3) 'That the receivers forthwith pay a dividend of 21 per cent. upon the adjudicated claims against the defendant Willys Corporation, allowed in all districts, as set forth in the reports of the special master.'

"Orders, dated August 21, 1923, and March 11, 1924, respectively, of the District Court for the Southern District of New York: (1) 'The receiver herein is hereby authorized and directed to pay out of the funds in his hands a dividend of 12 per centum upon the amount of claims of general creditors duly allowed herein.' (2) 'That the receiver herein is authorized and directed to pay a dividend of 10 per cent. on the claims of general creditors duly allowed herein.' "

It appears that the total amount paid to the creditors is as large as the amount of the claims allowed; and it also appears that the receivers still have in their hands $3,100,-000 unexpended. It thus is apparent to us that the assets still in the hands of the receivers are sufficient to pay the pending and unadjudicated claims, if they are finally allowed, together with the interest which may be due on the claims.

[1] It is conceded by the appellants that there is a surplus in the estate available for the payment of interest on the adjudicated claims during the period of the receivership. They also concede that interest accrues upon unpaid balances of claims against the estate after the date when the court took over the administration of the estate, and that the creditors are entitled to such interest in cases where, as in this case, a surplus remains after the payment of the principal of the claims as allowed. They admit that it is well-established law that, where there is a surplus remaining in the hands of the receivers after the payment of the claims as allowed, the corporation is not entitled to such surplus until the interest which accrued during the receivership upon the unpaid balances of the claims has been paid in full. The only disagreement between the appellants and the appellees is as to the method of computing the amount of the unpaid bal-ances and the amount of interest so payable.

By petition verified April 12, 1924, the receiver appointed in the Southern District of New York applied to the District Court in that district for instructions as to whether interest upon the general claims for the period of the receivership should be calculated by one of two methods:

In method No. 1, the dividend payments to creditors hereinbefore referred to are treated as payments made on their respective dates, wholly on account of the principal of the various claims as allowed. Inasmuch as dividends aggregating 100 per cent. have been paid, this method assumes that the principal of these claims has been paid in full, and that nothing remains to be paid thereon, except interest.

In method No. 2, each dividend payment is treated as a payment first on account of the interest accrued on the respective claims during the period of the receivership up to the date of the payment, the balance of the payment then being applied to reduce the principal of the claims. Under this method, the principal of the claims has not been paid in full, although dividends aggregating 100 per cent. of the principal amount of the claims have been paid thereon.

Specifically, by method No. 1, there remained unpaid on the general claims on March 15, 1924, $841,276 of interest, and by method No. 2, $900,414 of principal. By order dated June 3, 1924, being the order appealed from, the District Court instructed the receiver to follow method No. 2. Appellants contend that method No. 1 is the proper method.

The question involved in the appeal is as to the extent to which the principal of the claims has been paid by the five dividends aggregating 100 per cent. of such principal. It is the contention of appellants that the principal has been paid in full and that only interest remains to be paid. If we understand their contention, and the reason therefor, it is that under the method they contend for, which is method No. 1, the surplus which the corporation will ultimately receive after the payment of all claims, principal and interest, has been made, will be some thousand dollars greater than it will be if payments are to be made in accordance with method No. 2.

This brings us to inquire into the rules applicable to the payments already made and those which remain to be made because of the interest which may be due thereon. In a case in the Supreme Court of the Unit-

ed States in 1839, Story v. Livingston, 13 Pet. 359, 371 (10 L. Ed. 200), Mr. Justice Wayne, writing for the court, stated the rule as follows:

"The correct rule, in general, is, that the creditor shall calculate interest, whenever a payment is made. To this interest, the payment is first to be applied; and if it exceed the interest due, the balance is to be applied to diminish the principal. If the payment fall short of the interest, the balance of interest is not to be added to the principal so as to produce interest. This rule is equally applicable, whether the debt be one which expressly draws interest, or on which interest is given in the name of damages."

[2] And that is understood to be the rule in all the federal courts before and since that time. Smith v. Shaw, 2 Wash. C. C. 167, Fed. Cas. No. 13,107; Russell v. Lucas, Hempst. 91, Fed. Cas. No. 12,156a; Harlan v. Houston, 258 F. 611, 170 C. C. A. 65. The question came before Chancellor Kent in 1814, and was one of the first cases decided by him after he became chancellor. The case was that of State of Connecticut v. Jackson, 1 Johns. Ch. (N. Y.) 13, 7 Ann. Cas. 471. He stated the rule as follows:

"The rule for casting interest, when partial payments have been made, is to apply the payment, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes towards discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due."

In 1835 the question came before Chancellor Walworth in New York in Stone v. Seymour, 15 Wend. 19, 23. He states that:

"Some of the fundamental principles of the civil law appear to have been adopted everywhere, and to admit of no doubt: * * * (3) If a partial payment is made, on account of debts, one part of which debts consists of the principal and another of the interest or compensation due for the use of the capital of such debts, so much of the payment as is necessary to satisfy the interest, or arrears then due, shall be first applied for that purpose, and the residue only shall go to reduce the amount of the principal debt. These rules prevailed in the Roman or civil law, and are now the settled law of France, Spain, Holland, Scotland, England, and the United States. * * * The last of these principles is also supported by all of the English and American cases in which the rule has been settled as to the computation of interest, when partial payments have been made upon accounts or demands drawing interest, and where both principal and interest were due at the time of such payments."

We shall not review the New York cases which have since been decided. We content ourselves with a reference to Haffey v. Lynch, 193 N. Y. 67, 71, 85 N. E. 817 (1908), in which Chief Judge Cullen, speaking for a unanimous court, quotes approvingly the doctrine laid down by Chancellor Kent in Connecticut v. Jackson, supra, and hereinbefore set forth. In Haffey v. Lynch many of the New York cases are cited. And such is recognized in the courts of the several states to be the general rule. Downer v. Whittier, 144 Mass. 448, 11 N. E. 585; Haffey v. Lynch, 193 N. Y. 67, 85 N. E. 817; Holcombe v. Holcombe, 74 N. J. Law, 257, 65 A. 855; Bower v. Walker, 220 Pa. 294, 69 A. 984; Lowe v. Schuyler, 187 Mich. 526, 153 N. W. 786; Christie v. Scott, 77 Kan. 257, 94 P. 214; Porten v. Peterson, 139 Minn. 152, 166 N. W. 183; Townsend v. Riley, 46 N. H. 300; Treat v. Stanton, 14 Conn. 445; Pierce v. Faunce, 53 Me. 351; Fultz v. Davis, 26 Grat. (Va.) 903; Liskey v. Snyder, 66 W. Va. 149, 66 S. E. 702; Baker v. J. W. McMurry Contracting Co., 282 Mo. 685, 223 S. W. 45; Moss v. Odell, 141 Cal. 335, 74 P. 999; Fockler v. Beach, 32 Iowa, 187; Heartt v. Rhodes, 66 Ill. 351; Jacobs v. Ballenger, 130 Ind. 231, 29 N. E. 782, 15 L. R. A. 169; Boreing v. McHargue, 152 Ky. 360, 153 S. W. 463; South Georgia Mercantile Co. v. Lance, 143 Ga. 530, 85 S. E. 749; Hill v. Durand, 58 Wis. 160, 15 N. W. 390; Tooke v. Bonds, 29 Tex. 419; McQueen v. Whetstone, 127 Ala. 417, 30 So. 548; Reade v. Street, 122 N. C. 301, 30 S. E. 124; Rogers v. Yarnell, 51 Ark. 198, 10 S. E. 622; First National Bank v. Courtright, 82 Or. 490, 158 P. 277, 161 P. 966; Hart v. Dorman, 2 Fla. 445, 50 Am. Dec. 285; Frownfelter v. State, 66 Md. 80, 5 A. 410; Brooks v. Robinson, 54 Miss. 272; Davis v. Neligh, 7 Neb. 78; De Bruhl v. Neuffer, 1 Strob. (S. C.) 426; Tooke v. Bonds, 29 Tex. 419; Miami Exporting Co. v. United States Bank, 5 Ohio, 260; Curd v. Davis, 1 Heisk. (Tenn.) 574; Perry v. Taylor, 1 Utah, 63; Boston Inv. Co. v. Hot Springs Board of Education, 33 S. D. 1, 144 N. W. 129.

The rule in the United States on this subject prevails also in England. The first English case on the subject seems to be that of Bromley v. Goodere, 1 Atk. 75, which was decided by Lord Chancellor Hardwicke in 1743. A commission of bankruptcy had been issued in 1711, but matters seem to have

been permitted to drag along in a very deliberate fashion, and in 1743 the case had not been finally settled. It is noticeable that the question in that case was raised by, bill, and not, as in the instant case, by petition. It was objected that the question was one which should have been raised by petition. Upon that point the Lord Chancellor remarked that it was equally proper that the matter should come before him by bill. With that phase of the matter we are not here concerned. The main question in the case was stated to be "whether creditors for debts carrying interest by contract are entitled to have subsequent interest." The rule which the Lord Chancellor laid down was stated by him as follows: "The master to take an account of what has been paid to such creditors by way of dividends, and what has been so paid to be applied in the first place to keep down the interest, and afterwards in sinking the principal. * * * "

Almost 100 years later, and in 1841, the matter was considered at length by Lord Chancellor Cottenham in Bower v. Marris, Cr. & Ph. 351, 354, 360. In referring to the importance of the question the Lord Chancellor said: "If there being a surplus of a bankrupt's estate, after paying 20 shillings in the pound upon the debts proved, were not, unfortunately, a rare occurrence, this would be a very important case."

In that case the doctrine announced by Lord Chancellor Hardwicke was reasserted, and followed, and in doing so Lord Cottenham declared that from 1745 to the case of Ex parte Higginbottom, 2 G. & J. 123, in 1826, the principle had been "the recognized rule, so well understood as not to be the subject of question." Ex parte Higginbottom, decided by Sir J. Leach, was the sole authority cited against the rule, and that case Cottenham declared had been decided upon a mistaken supposition.

The authorities show that the rule laid down by Lord Chancellor Hardwicke in 1743 is still the law of the English courts. Warrant v. Finance Company's Case, L. R. 4 Ch. App. 643, 645; Whittingstall v. Grover, 55 Law Times, 213, 217; Ex parte Koch, 1 V. & B. 342; Smith v. Law Guarantee & Trust Society, [1904] 1 Ch. 500, [1904] 2 Ch. 569 (Ch. A.); In re Calgary & Medicine Hat Land Co., [1908] 2 Ch. 652. The same doctrine prevails in the Chancery Court of Ireland, Ex parte Deey, 2 Ba. & Be. (1812); and in the Court of Session of Scotland, Gourlay and others v. Watson & Co., [1900] 2 Court of Session (5th Series) 761.

[3] It is true, however, that as a general rule, after property of an insolvent is in custodia legis, interest thereafter accruing is not allowed on debts payable out of the funds realized by a sale of the property. The reason assigned is that, in such cases the delay in distribution is held to be the act of the law and a necessary incident to the settlement of the estate. In such cases interest is payable from the time the debt became due and payable up to the date of the appointment of the receivers. Tredegar Co. v. Seaboard Air Line Ry., 183 F. 289, 105 C. C. A. 501. The general rule as above stated is conceded to be the law in American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U. S. 261, 266, 34 S. Ct. 502, 58 L. Ed. 949. But this is not because the claims lose their interest-bearing quality during the period within which the property is in custodia legis. The rule does not prevent the running of interest during a receivership, and if, as a result of good fortune or good management, the estate proves sufficient to discharge the claims in full, interest as well as principal is to be paid. American Iron & Steel Manufacturing Co. v. Seaboard Air Line Ry. Co., supra.

[4] If, therefore, it appeared in the court below, as it is conceded it did, that the assets were sufficient to pay all claims in full, principal and interest accruing during the receivership, there is no doubt that the appointment of the receivers did not stop the running of interest on the claims; and, that being established, it seems to us that the order made in the court below, which followed method No. 2, was justified in law.

It has been held in bankruptcy that interest on claims drawing interest is to be computed to the filing of the bankruptcy petition. Ferguson v. Lyle (C. C. A.) 267 F. 817. And it has also been held that the doctrine that interest ceases at the date of the filing of the petition does not apply to solvent estates. Johnson v. Norris, 190 F. 459, 466, 111 C. C. A. 298; Remington on Bankruptcy (3d Ed.) § 726, p. 106; 2 Collier on Bankruptcy (13th Ed.) p. 1396. As to the rule which is applied in the case of secured creditors, who, after the filing of the petition in bankruptcy, sell their security and find the proceeds insufficient to pay the whole amount of their claims, and then come into the bankruptcy court to prove for their balance, it is held that they cannot apply the proceeds of the security

to interest accruing after the date of the commencement of the bankruptcy proceedings. Sexton v. Dreyfus, 219 U. S. 339, 31 S. Ct. 256, 55 L. Ed. 244. But with that doctrine we are not concerned, as all the claims herein involved are unsecured.

[5] It is important to have in mind that prior to the order appealed from, and which directed that payments should be applied according to method No. 2, no order had been made fixing the application of payments as between the principal of claims and the interest thereon. The dividend orders hereinbefore set forth were in the usual form. They simply directed the receiver to pay a dividend upon the adjudicated claims. That this did not amount to an appropriation of the payments as between principal and interest is shown by the decision in Re Calgary & Medicine Hat Land Company, Limited, [1908] 2 Ch. 652. In that case the dividend orders directed dividends to be paid "on the principal sums by the master's certificate certified to be due," and the last of the dividends was described as "the balance of the principal sum." It was held both in the Chancery Division and in the Court of Appeal that there had been no appropriation of the payments.

In his opinion in the Court of Appeal Cozens-Hardy, J., said: "I agree with Joyce, J., that there has been no complete appropriation of the payments as between principal and interest. * * * I cannot treat them [the orders] as finally appropriating the dividends in discharge of principal. The amount of the dividends paid was measured by reference to the principal sums stated in the master's certificate, but that is all. It might have been better to have added in each order the words 'generally on account' or their equivalent, but I think the practice of the court justifies us in implying those words in a case like this."

And Farwell, J., writing in the same court, said: "In the present case each order for payment was made as a step towards final distribution, and each payment is therefore subject to adjustment, so long as any sufficient funds remain under the control of the court. There was not, and could not properly be, any adjudication by the court in each order that the sum paid was to be taken in extinction of so much capital; nor did any order purport to be such an adjudication. * * * It was, in fact, a payment on account of and by reference to the only sum of which the master had taken an account. It was not a final payment destroying the creditors' right, but a payment

on account without prejudice to that inherent right of adjustment which always exists in cases of this nature."

The orders made in the instant case prior to the order of June 3, 1924, which order is the one appealed from, are to be regarded as simply directing "payments on account." If the District Judge, when he made the order of June 3d, thought that the previous orders were final, instead of orders directing payment on account, and we are not satisfied that he thought any such thing, he was in error, and his mistake is subject to the correction of this court. We have no doubt that all the orders prior to the order of June 3d meant nothing more than payment on account without prejudice to "that inherent right of adjustment which always exists in cases of this nature."

The order of June 3d was an exercise of this right of adjustment, and as at the time it was exercised there was in the hands of the receiver a sufficient surplus to pay principal and interest, including the interest which had accrued while the property was in custodia legis, and the creditors at that time had as much right to the payment of the one as the other, no error was committed.

The order is affirmed.