[L. A. No. 13988. In Bank.—January 31, 1935.]

NELS GREVA et al., Appellants, v. EDWARD RAINEY, Superintendent of Banks, etc., Respondent.

[L. A. No. 13989. In Bank.—January 31, 1935.]

FRANK L. WOOD et al., Appellants, v. EDWARD RAINEY, Superintendent of Banks, etc., Respondent.

Dockweiler, Dockweiler & Finch, Walter E. Burke and Stanley & Lewis for Appellants.

Robbins & Van Fleet, Devlin & Devlin & Diepenbrock, Mathes & Sheppard, Charles Dell Rubin and Colladay, McGarrahy, Colladay & Wallace, as *Amici Curiae* on Behalf of Appellants.

Sullivan, Roche, Johnson & Barry for Respondent.

SHENK, J.—An action was brought by Nels Greva and others, who were depositors in the savings department of the Pan American Bank of California, which is in process of liquidation, for a declaration of the powers and duties of the defendant as liquidating agent, under the provisions of the California Bank Act. They sought a declaration that the defendant Superintendent of Banks, as such liquidating agent, should transfer the balance of funds in the commercial department, after payment of 100 per cent of the claims of the depositors in that department and before payment to them of any interest during the period of liquidation, to the savings department to be applied to the payment of the claims of the savings depositors. In the action of *Wood et al.* v. *Rainey, etc.*, consolidated therewith, the plaintiffs were stockholders of the bank. They sought a similar declaration and in addition a declaration that no interest should be paid to the creditors or depositors before distribution to the stockholders. The court declared and decreed

adversely to the plaintiffs' contentions in each case and both sets of plaintiffs have appealed.

The Pan American Bank was chartered pursuant to the provisions of the Bank Act of this state. (Chap. 76, Stats. 1909, p. 87, as amended.) It organized with three departments, a trust, a commercial and a savings department. It conducted its operations until July 19, 1929, when the defendant's predecessor, exercising the powers vested in him by section 136 of the act, took possession of the property and business of the bank and ordered its liquidation.

The liquidation of the bank proceeded to the point where all of the creditors of the trust department were paid the amount of their claims, without interest from July 19, 1929, and a surplus of $144,753.38 was transferred from that department to the savings and commercial departments, the latter receiving about $57,000 of such surplus. After payment of 100 per cent of the claims of the depositors of the commercial department, without interest from July 19, 1929, a surplus remained of which $86,000 was retained in that department to await the determination of the questions herein presented, and the balance, amounting to some $100,000, was transferred to the savings department. The creditors of the savings department have been paid 85 per cent of their claims, and there will not be sufficient funds to pay the full 100 per cent of their claims computed as of July 19, 1929, unless the balance remaining in the commercial department is transferred to the savings department without payment of interest from July 19, 1929, to the commercial depositors. The actions herein followed and there are presented two main questions: (1) Are the depositors of the commercial department entitled to interest on their claims from July 19, 1929, the date the bank closed its doors, to the date of payment of their claims, before any transfer of funds may be made to liquidate the claims of depositors in the savings department? And (2) are depositors in any event entitled to interest on their claims from the date of the closing of the bank as against the stockholders of the bank?

The Bank Act is silent on the question of interest in either case. It is contended that such silence does not prevent the application of the general law providing for the legal rate for delay in payment of a money obligation.

(Sec. 3302, Civ. Code; sec. 1, Usury Act; Stats. 1919, p. lxxxiii.)

By section 136 of the Bank Act the Superintendent of Banks is directed to call a meeting of the stockholders when he "shall have paid to each and every depositor and creditor of such bank whose claims as such creditor or depositor shall have been duly proved and allowed, the full amount of such claims . . . " No other provision of the act is helpful in determining whether the "full amount of such claims", within the meaning of that section, includes interest at the legal rate from the time the bank's doors were closed until the claims are paid.

The language of section 136b of the act providing that in any action brought under the act "no damage may be awarded", does not purport to deal with the question of interest on creditors' claims during the period of liquidation under the facts of this case.

At common law interest was not recoverable. (See *National Bank of the Commonwealth* v. *Mechanics' Nat. Bank*, 94 U. S. 437 [24 L. Ed. 176].) In cases where the special statute involved is silent on the question of interest, a host of authorities appears to have settled the question by the application of the general statutes providing for interest in upholding the right of the creditors to recover interest on their claims whenever a surplus of corporate assets remains, before any distribution of such surplus assets is made to the stockholders of the corporation.

In the case of *State* v. *Park Bank & Trust Co.*, 151 Tenn. 195 [268 S. W. 638, 29 A. L. R. 449], where the question arose as between the creditors and the stockholders, a similar provision of the banking law was involved, i. e., the Superintendent of Banks was directed to deliver to the firm or individual banker the assets remaining after he had paid every depositor and creditor whose claims were duly proved and allowed the full amount of such claims. Likewise the bank law was silent on the matter of interest. It was held that the chancellor properly applied the general laws relating to the payment of interest, and the judgment decreeing the surplus fund to the creditors as interest was affirmed. In its discussion the court reviewed other cases to like effect, including cases involving the National Banking Act, which also lacks any express provision on the matter of interest, and

wherein it was also decided that demand for such interest is unnecessary, but that the interest was properly computed from the date of suspension of business. That case and the cases cited in the annotation following the report in 49 A. L. R., at pages 457 et seq., disclose that the general rule that after property of an insolvent is *in custodia legis* interest thereafter accruing will not be allowed, is not applicable where the assets of the debtor are sufficient to pay the claims with interest. Those cases declare that the statement that interest will not be computed from the date of insolvency became the general rule, not because the claims were considered to have lost their interest-bearing quality, but because in the great majority of cases the assets were insufficient to pay both the principal and the interest which would otherwise become due; for, "if, as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid". (*American Iron & Steel Mfg. Co.* v. *Seaboard Air Line R. Co.*, 233 U. S. 261 [34 Sup. Ct. 502, 58 L. Ed. 949]; *People* v. *California Safe Deposit & Trust Co.*, 34 Cal. App. 269, 272 [167 Pac. 181].)

In *Johnson* v. *Norris*, 190 Fed. 459 [111 C. C. A. 291, L. R. A. 1915B, 884] (*certiorari* denied, 232 U. S. 723 [34 Sup. Ct. 479, 58 L. Ed. 815]), it is pointed out that were the rule otherwise the extraordinary result would follow that a delay in payment brought about by a proceeding to liquidate assets to satisfy the claims of creditors would prevent the creditors' collecting interest from an estate able to pay it, when the general law is that interest is given for delay in payment. The remark made by the court in *Brown* v. *Lamb*, 6 Met. (Mass.) 203, that "he becomes in fact a solvent debtor, and his duties and obligations are the same with those of other solvent debtors", becomes pertinent in any case involving a liquidation proceeding where sufficient assets remain to pay interest on the claims of creditors and there is no express statutory provision withholding application of the general laws that interest at the legal rate is payable. The following authorities, among others, are also pertinent in support of the proposition that the creditors of the bank are entitled to have interest paid out of surplus assets from the date of suspension of business to the time of payment in the absence of an express statutory prohibition, before the

rights of the stockholders may be considered, and under these authorities the result appears to be the same whether the bank has voluntarily closed its doors, or possession of its property and business has been taken by an officer vested by law with power to liquidate and distribute its assets, or appointed by a court for that purpose: *People* v. *American Loan & Trust Co.*, 172 N. Y. 371 [65 N. E. 200]; *People* v. *Merchants Trust Co.*, 187 N. Y. 293 [79 N. E. 1004]; *In re People, by Stoddard*, 249 N. Y. 139 [163 N. E. 129]; *Green* v. *Stone*, 205 Ala. 381 [87 So. 862]; *McGowan* v. *McDonald*, 111 Cal. 57, 72 [43 Pac. 418, 52 Am. St. Rep. 149]; *Zang* v. *Wyant*, 25 Colo. 551 [56 Pac. 565, 568, 569, 71 Am. St. Rep. 145]; *Lamar* v. *Taylor*, 141 Ga. 227 [80 S. E. 1085]; *Flynn* v. *American Banking & Trust Co.*, 104 Me. 141 [69 Atl. 771, 129 Am. St. Rep. 378, 19 L. R. A. (N. S.) 428]; *Baker* v. *Williams & England Banking Co.*, 42 Or. 213 [70 Pac. 711]; *Hays* v. *City Bank of Greenwood*, 70 S. C. 31 [48 S. E. 736]; *Richmond* v. *Irons*, 121 U. S. 27, 64 [7 Sup. Ct. 788, 30 L. Ed. 864]; *National Bank of the Commonwealth* v. *Mechanics' National Bank*, 94 U. S. 437 [24 L. Ed. 176]; *Ohio Savings Bank & Trust Co.* v. *Willys Corp.*, 8 Fed. (2d) 463 [44 A. L. R. 1162]; *Chemical Nat. Bank* v. *Bailey*, 5 Fed. Cas. 537; 23 R. C. L. 104, 105; 14A Cor. Jur. 1014, 1015; 44 A. L. R., p. 1171, note, and cases cited; 19 L. R. A., note, pp. 430, 431, and cases cited.

In commenting upon the statement in *People* v. *American Loan & Trust Co., supra*, that "if the assets are sufficient to pay all, including interest, it must be paid, for, as against the corporation itself, interest should be allowed before the return of any surplus to the stockholders", the court in *People* v. *Merchants' Trust Co., supra*, said: "It may be admitted that these remarks were unnecessary to the disposition of the case then under consideration, but the rule thus asserted appears to us to be so eminently just and so well supported by other authority that we now have no hesitancy in adopting it as the rule that should be adhered to in disposing of questions of this character," citing other cases.

The case of *Tredegar Co.* v. *Seaboard Air Line Ry.*, 183 Fed. 289, is not necessarily opposed to the authorities which seem clearly to settle the question. There the court, in refusing to reverse the ruling that the claimant was not en-

titled to interest, held that the insolvent condition, i. e., the insufficiency of the assets to pay all claims, was confessed by the record. In *Ohio Savings Bank & Trust Co.* v. *Willys Corp., supra,* and *American Iron & Steel Mfg. Co.* v. *Seaboard Air Line R. Co., supra,* the Tredegar case is recognized as applying the general rule that where assets are insufficient interest is not recoverable.

It is contended by counsel for the defendants that the foregoing authorities compel the conclusion that interest is payable to the creditors in the commercial department before the defendant may be directed to transfer surplus funds from that department to pay the claims of other creditors. This is claimed to be the result because of the provision of the Bank Act which states that the assets of each department of the bank shall be applied solely to the claims of creditors of that department, and other provisions now to be noted.

Section 23 of the Bank Act provides for the apportionment of the capital and surplus to each department with the approval of the Superintendent of Banks and that such apportionment may be changed with his previous consent and approval. Section 24 prohibits a bank from opening a new department without obtaining the certificate of the Superintendent of Banks and complying with the requirements specified. By section 26 a bank having several departments is required to keep the books, deposits, reserves, cash, securities, investments, etc., separate from each of the other departments. Section 27 provides: "All money and assets belonging to each department, whether on hand or with other banks, and the investments made, shall be held solely for the repayment of the depositors and other claimants of each such department, as herein provided, until all depositors and other claimants of each such department shall have been paid, and the overplus then remaining shall be applied to any other liabilities of such bank." It is urged that as a result of the foregoing provisions each department must be considered as if it were a separate bank, and that the creditors of each are entitled to have the assets of the department applied to the payment of their claims with interest from the date of the closing of the bank to the time of payment before any surplus may be applied to the payment of the claims of other creditors.

As noted the Bank Act is silent in the matter of payment of interest. No express provision is included in section 27 to the effect that the money and assets of each department are to constitute a fund for the payment of the claims, with interest. Counsel for the defendant urge that the basis for the solution of the question as between the creditors and the stockholders, that is, that interest is payable where the assets permit, in the absence of any statutory prohibition, compels the same conclusion when the question arises between the creditors of the different departments of the same bank, under the structure provided by the act and with the attendant obligations and duties imposed for their benefit. However, the rationale of the decisions leads to the opposite conclusion. The decisions, including those hereinabove cited, are uniform to the effect that in so far as is possible the creditors of an insolvent debtor must be treated on a basis of equality. (See, also, *White* v. *Knox*, 111 U. S. 784 [4 Sup. Ct. 686, 28 L. Ed. 603]; *Thomas* v. *Western Car Co.*, 149 U. S. 95, 116, 117 [13 Sup. Ct. 824, 37 L. Ed. 663].) That, indeed, is the premise from which springs the rule that interest ordinarily will not be computed nor paid from the date of the suspension of business, or commencement of the receivership or other liquidation procedure. Therefore, there being but one debtor involved, all creditors are entitled to equal consideration except where the statute expressly provides otherwise, and then only to the extent provided. ■ It follows that the fact that section 27 requires the assets of each department to be held solely for the "repayment of the depositors" of that department is not to be held to enlarge the rights of such depositors so as to include interest when the act is silent on the matter and otherwise interest would not be recoverable. The reasoning to be applied when the question is one of interest as between creditors is stated in *People* v. *American Loan & Trust Co.*, *supra*, viz.: "Interest should not be run in favor of one creditor at the expense of another while the law, acting for all, is administering the assets." We would be creating an exception to the general rule were we to hold in the present case, in the absence of express statutory language directing such payment of interest, that the creditors of one department were entitled to interest before other creditors of the bank had been paid their claims. In *Lamar* v. *Taylor*,

*supra,* the question whether a creditor should be allowed interest as against another creditor was held to be distinct from the question whether interest was recoverable as against the stockholders.

Counsel present no authority which supports the contention that under the facts of the present case the creditors of the commercial department are entitled to interest during liquidation before the claims of the savings depositors are paid. In fact, the authorities cited support only the contrary conclusion. In *Lippitt* v. *Thames Loan & Trust Co.,* 88 Conn. 185 [90 Atl. 369], the statute provided that investments of the savings department should be for the exclusive protection of the depositors of that department and should not be liable for nor be used to pay any other obligations or liabilities of the bank until after the payment of all the deposits in the savings department. There the court recognized the rule that any claims for interest on such deposits were payable only from surplus after claims of all creditors of the corporation had been paid.

*People* v. *American Loan & Trust Co., supra,* involved a statute which provided that in case of the dissolution of the company the debts due from the company as trustee, guardian, receiver or depositary of money in court or of savings bank funds should have a preference. Interest on such claims from the date of suspension was sought by the creditors so classified as having a preference. The court stated: "The claim of the preferred creditors, if sustained, would not only exhaust the funds in the hands of the receiver, and leave nothing for the unpreferred creditors, but would give them more interest than they had contracted for or could have received if the company had not failed. . . . As the statute does not say that preferred claims shall be paid with interest to the date of payment, the courts should not, because the claims of substantially all the creditors, both preferred and unpreferred, were alike in origin, for they were created by the deposit of money; and preference in derogation of the common law should not be extended by construction beyond the express command of the statute. . . . Interest should not run in favor of one creditor at the expense of another while the law, acting for all, is administering the assets. If the assets are sufficient to pay all, including interest, it must be paid, for, as against the corpora-

tion itself, interest should be allowed before the return of any surplus to the stockholders. As between the creditors themselves, however, no interest should be allowed during the process of administration. . . . Distribution should be made as of the date when the delay began, for it was not only caused by the law but was necessary for the protection of all classes of creditors. As between the creditors themselves, therefore, interest ceased to accrue upon their respective claims, whether preferred or unpreferred, from the day when the corporation let go and the court took hold. This rule is so simple and easy of application that it will not only tend to prevent litigation, but will stimulate all creditors to frown upon delay and to promptly call the receiver to account. It will not induce preferred creditors to rest easy in reliance upon the expectation that they will make money through the misfortune of the corporation, and during the entire period of administration receive interest at a greater rate than they had contracted for.''

In *Leach* v. *Sanborn State Bank,* 210 Iowa, 613 [231 N. W. 497, 69 A. L. R. 1206], interest from the day of suspension was claimed by a depositor of public funds as a preferred claimant, before the claims of other depositors should be paid. The court rejected as authority cases cited to support its statement that the rule that distribution should be made as contended by the preferred depositor prevails in the federal and has support in some state courts, and said: ''Had the legislature intended that interest should be allowed upon the deposit of public funds, after the appointment of a receiver in preference of the claims of general depositors, it would have been a simple matter to have so provided. . . . No such discrimination is, or was, we think, contemplated.'' While expressly withholding pronouncement on the general question in other cases the court also stated: ''Suffice it to say that there is apparently a tendency on the part of state courts to deny interest on preferred claims unless the assets are sufficient to pay the claims of all creditors in full . . . '' The cases cited in the note following the report of that case in 69 A. L. R., at pages 1210 et seq., support the court's comment.

In the case of *In re Prudential Trust Co.,* 244 Mass. 64 [138 N. E. 702], the statute provided that the deposits and investments of the savings department ''shall be appropri-

ated solely to the security and payment of such deposits, shall not be mingled with the investments of the capital stock or other money or property belonging to or controlled by such corporation, or be liable for the debts or obligations thereof until after the deposits in said savings department have been paid in full.'' One of the questions for determination was, when are the deposits in the savings department paid in full? It appeared that, when the savings depositors had received 100 per cent of their claims, a surplus remained, and that the depositors in the commercial department had not received payment of their claims. The ruling was that the savings depositors were not entitled to interest against that surplus, but that the commercial depositors were entitled to have it transferred to apply on the principal of their claims. The court there pointed out that the provisions of the statute did not make the assets of the savings department the property of the depositors in that department to be in all events wholly distributed among them. In the present case no different conclusion is tenable merely by reason of the fact that in the California Bank Act the word ''depositors'' is used in lieu of the word ''deposits'' which appears in the Massachusetts statute.

The plaintiff stockholders here also place reliance upon the Prudential Trust Company case in support of their contention that the depositors of each department are entitled only to payment of 100 per cent of their claims and may not recover interest in any event. But at least one fact appearing in that case indicates that it may not be considered authority on the point, viz., the fact that there would not be a surplus after payment of the claims of the commercial depositors.

The defendant cites the case of *In re People, by Stoddard,* 249 N. Y. 139 [163 N. E. 129], wherein it was held that assets deposited in this country by a foreign insurance company to protect the interest of investors here were liable for interest during the period of receivership before they were transferred for distribution to satisfy the claims of foreign creditors. On the facts of that case the conclusion is not opposed to the weight of authority. It was expressly noted in the decision that proof of claims of foreign creditors in this country was permitted only as a matter of favor for

the purpose of distribution of the assets by the foreign receiver, and that the supposed analogy between the resident creditors in that case, and the preferred creditors of an insolvent corporation, was quite illusory inasmuch as the claimants in this country had more than a preference or a lien in the distribution of the assets involved, since they were the only claimants entitled to share in them.

It is apparent from the foregoing discussion and the authorities cited that when the bank is a going concern its separate departments pursuant to the Bank Act may be said to be conducted as though each were a separate bank, but when insolvency or other condition of its affairs forces it to close, all of its creditors are to be considered on an equality as the creditors of a single entity, except in so far as the Bank Act otherwise specifically provides.

The plaintiffs herein also sought from the trial court a declaration of the defendant's duties as such liquidating officer with respect to a sale of the balance of the assets of the bank and a termination of the liquidation by calling a meeting of the stockholders as provided in section 136 of the Bank Act. No question is raised as to the correctness of the court's findings and judgment on that phase of the controversy.

The application of the appellants to produce additional evidence is denied for the reason that if the evidence to be produced were presented, a different conclusion would not be justified.

The judgment of the court as to the rights of the depositors to interest and transfer of funds is therefore modified so as to provide and declare as follows: That the depositors and creditors of the commercial department are not entitled to the payment of interest on their claims before the surplus funds in that department are applied to the payment of claims of other creditors of the bank, and that the depositors of the savings department are entitled to have the fund now held in the commercial department applied to the payment of their claims; that if any corporate assets remain after the claims of all depositors and creditors of the bank have been paid, the assets remaining shall be applied by the defendant to the payment of interest on such claims from the date of suspension of business to the

date of payment before any distribution is made to the stockholders.

As so modified the judgment is affirmed.

Waste, C. J., Preston, J., Curtis, J., Thompson, J., and Langdon, J., concurred.

Rehearing denied.