[Civ. No. 16018. Second Dist., Div. Two. Dec. 19, 1947.]

MAYNARD GARRISON, as Insurance Commissioner, etc., Petitioner, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Respondent; JOHN HARNISH et al., Appellants.

Mitchell, Silberberg & Knupp and Peery Price for Petitioner.

O'Melveny & Myers, Pierce Works, John Whyte and Aubrey Harwood for Respondent.

George W. Manierre and Paul G. Breckenridge for Appellants.

MOORE, P. J.—The question for decision is whether an insurance company which was organized to conserve an insolvent insurance company and to rehabilitate its business is obligated to pay interest on claims allowed by the conservator

against such insolvent, based upon the breach by the latter of certain policies, in the absence from the rehabilitation agreement of a specific promise to pay such interest, the agreement having provided for the payment to the liquidator for the benefit of such claimants an amount equal to the sum of all "allowed claims" against the insolvent company.

As of July 22, 1936, the Insurance Commissioner as conservator of the Pacific Mutual Life Insurance Company of California, herein referred to as "old company," with the trial court's approval on December 4, 1936, entered into a Rehabilitation and Reinsurance Agreement, herein designated as "R agreement," with Pacific Mutual Life Insurance Company, herein referred to as "new company." On February 2, 1937, the Insurance Commissioner of California was appointed as conservator and liquidator of the old company and since the last-mentioned date such commissioner and his successors have been the duly appointed, qualified and acting liquidators of the old company. On May 6, 1937, the commissioner pursuant to statute* published notice to the policyholders, creditors, shareholders and all other persons interested in the assets of the old company, requiring claimants to file their claims with him together with proofs thereof within six months after the date of the first publication of such notice. The R agreement is a lengthy document containing 28 paragraphs or *articles* under the terms of which new company became obligated to take over and conduct the insurance business of the old company, protect the latter's assets, reinsure its policyholders and liquidate its obligations.

Appellants were holders of the old company's noncancellable income policies,† insuring them against total disability. (R agreement, art. 1.) Their claims having arisen from old company's breach of such contracts and having been allowed by the conservator, appellants asserted their right to be paid legal interest by new company from the date of old company's established insolvency. The current Insurance Commissioner,

---

*Insurance Code, section 1021. "Upon the making of an order to liquidate the business of such person, the commissioner shall cause to be published notice to its policyholders, creditors, shareholders, and all other persons interested in its assets. Such notice shall require claimants to file their claims with the commissioner, together with proper proofs thereof, within six months after the date of first publication of such notice, in the manner specified in this article."

†See *Caminetti* v. *Pacific Mutual Life Insurance Co.*, 23 Cal.2d 94, 97 [142 P.2d 741]; also, same parties, 22 Cal.2d 77, 79 [136 P.2d 779].)

herein referred to as petitioner, rejected such additional liability as not having been definitely assumed by new company. At the same time, as a protection to the creditors of old company, he demanded that new company continue to transfer additional funds until an adjudication of the matter might be obtained. He instituted this action for the purpose of obtaining a declaration with reference to the liability of new company for the claimed interest. The actual filing was expedited by new company's payment to petitioner of $787,263.25, the amount of the principal of all claims "finally allowed," as full compliance with its obligation under the R agreement.

Upon the presentation of the petition the court below issued its order directing all persons interested as creditors, policyholders or claimants of old company to appear and show cause why the court should not make an order determining (a) whether the liability of new company under article 17 is limited to the payment of a sum equal to the principal amount of the claims filed with the liquidator and finally allowed, or (b) extends to the payment of a sum equal to the amount of all such claims including such interest, if any, as may have accrued on such claims.

New company denied that it was obliged to pay any sums on account of interest. Appellants by their answer alleged that article 17 should be so construed as to extend new company's liability "to the payment of interest accrued and to accrue upon the principal sum of the claims of appellants theretofore approved, allowed and paid." A trial of the issues thus created resulted in the judgment that under the proper interpretation of article 17 of the R agreement, liability of the new company to make payments to the liquidator (other than its liability to pay costs and legal expenses of the liquidator) "is limited to the payment of a sum or sums equal to the principal amount of the claims against the Pacific Mutual Life Insurance Company of California filed with the liquidator and finally allowed, irrespective of whether or not the holders of such claims may now or hereafter be entitled to any interest upon such claims as against the liquidator or against The Pacific Mutual Life Insurance Company of California or its shareholders." The correct interpretation of article 17 is the solution of the present controversy. By the second sentence thereof new company agrees "to pay to the liquidator for payment to claimants an amount equal to the sum of all claims against old company filed with the liqui-

dator and finally allowed."* While the true construction of
R agreement must be derived primarily from its language,
the significance of the words used therein will more readily
appear from the position and status of the parties at the time
of its execution. On July 22, 1936, old company had become
insolvent and was *in custodia legis*. The Insurance Commis-
sioner pursuant to statute had taken summary possession of
old company and was acting as conservator and liquidator.

---

*"(17) In the event the Commissioner shall hereafter be appointed
Liquidator of the Old Company, the New Company agrees to assume,
and does hereby assume and agree to pay, all costs and expenses of
such Liquidator, including attorney's fees, fixed and approved as pro-
vided by law. The New Company . . . does hereby agree to pay to the
Liquidator for payment to claimants an amount equal to the sum of all
claims against the Old Company filed with the Liquidator and finally
allowed; provided, however, that the New Company shall not be required
to make any payment or payments on account of any claims so filed
with the Liquidator except to the extent and in the manner hereinafter
provided (but the New Company, with the consent of the Commissioner,
may waive the foregoing limitation and anticipate any such payments);

"(a) The New Company will, as of the effective Date of this agree-
ment, with the approval of or in accordance with the requirements of
the Commissioner, establish reserves against all policies and policy lia-
bilities of the Old Company subject to assumption or reinsurance here-
under (but, with respect to Non-Can Policies, only to the extent de-
scribed in paragraphs 11 and 13 hereof). If any policy holder or policy
claimants shall elect to reject assumption and reinsurance hereunder,
the New Company agrees to pay to the Liquidator, immediately after
the time for filing claim with said Liquidator shall have expired, an
amount equal to the reserves so originally established against their
policies or claims.

"(b) Whenever . . . any sums are transferred to the special fund
for the restoration of benefits under Non-Can Policies, the New Com-
pany shall pay to the Liquidator a further sum of money bearing the
same ratio to the moneys so transferred as the Non-Can Policies whose
holders have rejected reinsurance hereunder and upon which claims have
been filed in the liquidation proceedings as aforesaid, bears to the Non-
Can Policies whose holders have accepted reinsurance hereunder.

"Until such time as the measure of the claims . . . shall have been
determined to the satisfaction of the Liquidator, . . . Non-Can Policies
shall . . . be evaluated on the basis of the percentage . . . of their
monthly benefit originally provided, whether or not the holders thereof
have accepted reinsurance hereunder.

"When the measure of the claim to the allowance . . . shall have
been determined to the satisfaction of the Liquidator . . . Non-Can
Policies shall thereafter be evaluated for the purposes of this subpara-
graph on the basis of allowable claim. . . .

"(c) Any remaining amount necessary to pay and discharge the
claims as aforesaid shall be paid at the time benefits under the Non-Can
Policies are fully restored.

"(d) The aggregate of the payments to be made in subparagraphs
(a), (b), and (c) hereof, shall not exceed the full amount of claims
finally allowed in the Liquidation proceedings as aforesaid. Any moneys
paid hereunder and remaining in the hands of the Liquidator after all
claims filed with him and finally allowed have been paid, shall be by
him returned to the New Company."

(Ins. Code, § 1013.) He was thereafter by valid order appointed conservator by the superior court which appointment was approved by the Supreme Court. (10 Cal.2d 307 [74 P.2d 761].) For the purpose of conserving the good will as well as the assets of old company the conservator organized new company and purchased all of its capital stock for $3,000,000 of old company's funds and transferred all of its assets to new company. (*Ibid,* p. 321.) For the commissioner to hesitate to exercise the power of his office and to save old company from burdensome litigation, would have been fatal for all of its policyholders.

 The language of the second sentence of article 17 reasonably and fairly construed means no more than the promise of new company to place in the hands of the commissioner all the moneys necessary for the payment of specified indebtedness which had been incurred under the administration of old company. The means of ascertaining the amount of such indebtedness was not left to speculation or calculation, except the requirement to add the amounts of all the claims as "allowed." That definitely excluded rejected claims. If it had been the intention of the authors of R agreement to include indefinite sums not yet ascertained, or unliquidated sums whose amounts would have been dependent upon the length of the period of delay in payment, reason would have required more specific language.

 Appellants' contentions (1) that the word "paid" as used in subparagraph (d) means "paid in full with interest," and (2) that the phrase "full amount of claims finally allowed" included interest by implication, are merely gratuitous assertions. The word "paid" is used daily, in all walks of life, with reference to payment of a fixed, definite sum. Certainly, payment of the principal sum only could be implied where the debt is specified with the distinctness which characterizes the second sentence of article 17. The use of the words "full amount of claims" cannot be said to connote a future computation of new company's obligation. The word "full" as used to modify "amount" signifies a totality of the "allowed" claims.

In determining whether holders of membership shares in a building and loan association were entitled to payment of the principal of their claims before the payment of interest for the period of liquidation upon the claims of investment certificate holders who had already received payment of their

principal, the Supreme Court observed: "The law gives preference in the matter of payment of the claim, which reasonably interpreted, means the principal sum due; and this claim has already been satisfied in full. As to interest the statute is silent." (*In re Pacific Coast Building-Loan Association,* 15 Cal.2d 134, 146 [99 P.2d 251].)

*Greva* v. *Rainey,* 2 Cal.2d 338 [41 P.2d 328], was two actions, one on behalf of the depositors in the savings department of a bank in liquidation for a declaration that the superintendent of banks, as liquidating agent, should transfer to the savings department the balance of funds in the commercial department after payment of 100 per cent of the *claims* of the commercial depositors and before paying them any interest during the period of liquidation. The other action was on behalf of the stockholders who sought a declaration that no interest should be paid to creditors or depositors before distribution to the stockholders. The decree, which was adverse to both plaintiffs, was modified by the court (p. 350) as follows: "That the depositors and creditors of the commercial department are not entitled to the payment of interest on their claims before the surplus funds in that department are applied to the payment of claims of other creditors of the bank, and that the depositors of the savings department are entitled to have the fund now held in the commercial department applied to the payment of their claims; that if any corporate assets remain after the claims of all depositors and creditors of the bank have been paid, the assets remaining shall be applied by the defendant to the payment of interest on such claims from the date of suspension of business to the date of payment before any distribution is made to the stockholders."

The Georgia Court of Appeals made a similar ruling. The state had deposited certain funds with a bank which became insolvent. The surety of the defunct bank paid the state and acquired its claim upon which it sued the City Bank which had taken over the assets of the bankrupt bank and agreed "to pay in full all claims entitled to priority." However, the court held that the contract "to pay in full all claims" covered only the principal of the indebtedness and announced the rule that "When a debtor becomes insolvent and his affairs are placed in the hands of a receiver for liquidation, it is just to all his creditors, regardless of the rank of their claims, that the *amounts of their debts shall be calculated as of the date of the suspension.*" (*Standard Accident Ins. Co.* v. *Luther Williams Bank,* 51 Ga.App. 633 [181 S.E. 201, 202].)

Exploring the R agreement for further proof of new company's intention with reference to the payment of interest as required by statute (Civ. Code, § 1641), it is found first that in the second sentence of article 17, new company "does hereby agree to pay the liquidator . . . an amount equal to the sum of all *claims* against old company." The word "interest" is conspicuously absent. Appellants contend that if interest had not been intended, the agreement would have said so. On the contrary, for the reasons already recited, a charge of interest would have been positively expressed. This conclusion is reinforced by the appearance of (1) the phrase "with interest" in article 6(c) which provides for "the restoration of the amount of the working capital . . . together with interest thereon at the average rate of interest earned by the new company during the period, to the sources from which it came"; (2) the same phrase in article 14 which makes provision for the use of the special fund by new company "to the end that the benefits originally provided in said non-can policies . . . may eventually be fully paid . . . with interest on deferred restoration payments of such benefits at the rate of 3½% per annum." Such carefully worded provisions for payment of interest spell a definite absence of intention to pay interest by a fair interpretation of article 17. It is unreasonable to think that new company, under the court's supervision, would have agreed to pay 7 per cent interest on their claims to those who had refused reinsurance in new company without saying as much, while by the very same instrument it agreed expressly to pay only 3½ per cent interest to the acceptors of the reinsurance plan on deferred restoration benefits.

Appellants contend that any doubt as to new company's liability for interest on their claims must be resolved in their favor. In support thereof, they cite section 1654 of title III of the Civil Code. In the first place an application of the rules embodied in the 18 preceding sections of title III, "Interpretation of Contracts," removes all doubt as to the meaning of article 17. Its language is "clear and explicit" and the construction herein adopted "does not involve an absurdity." (§ 1638.) Expression of the real intention of the parties was not frustrated by any fraud, mistake or accident. (§ 1640.) The whole of the R agreement taken together enables each clause to help the others to the interpretation that payment of the claims filed and allowed against old company does not require the inclusion of legal interest from July 22,

1936, the day on which old company was found to be insolvent. (§ 1641.) The provision to pay "all claims against the old company" by usage implies payment without interest, since interest is not customarily intended in the absence of an express covenant to pay it. (§ 1644.) The circumstance, to wit, old company's established insolvency at the time of the execution of the R agreement, compels the interpretation that interest was not to be added to the claims. (§ 1647.) It is customary practice in liquidation proceedings to marshal the assets of the debtor, fix the amount of its liabilities and disburse the assets among the creditors pro rata. Such a process would not be possible, if during the season of liquidation, the claims should be varied by the additions of varying amounts of interest.

 It is only in case that uncertainty exists after applying "the preceding rules" that the language "should be interpreted most strongly against the party who caused the uncertainty to exist." (§ 1654.) Appellants invoke the first portion of the second sentence of the cited section which declares that the promisor, i.e., new company, is presumed to be the party which caused the uncertainty to exist. But they may not resort to section 1654 unless it be first established that uncertainty exists in the language of article 17. This is not shown.

 Appellants contend that new company is a reincarnation of old company and, therefore, has impliedly promised to pay all of the latter's indebtedness. In this they ignore provisions of the Insurance Code, article 14 of chapter 1, part 2, division 1, which article deals with insolvency and liquidation proceedings. Section 1043 of such article provides that in any proceeding under the article, the commissioner may mutualize or reinsure the business of any person affected by proceedings thereunder and may enter into rehabilitation agreements. New company was organized by the sovereign power for the purpose of rehabilitating the business of one of its own creatures whose very existence inhered in the blood and sweat of the people. It was to go forward under the guidance of the state. Its identity is utterly distinct from that of old company, notwithstanding the latter's equitable ownership of new company's stock. It cannot be fairly said that it is a continuance of old company. It did not take over the latter's assets or assume its burdens at the behest of old company. Such transfer and assumption were rendered indispensable to the public weal and were required by law to conserve the common

good in general and the army of policyholders of old company in particular. New company was not organized by old company to do service in a prescribed manner for the latter but was created by the state to perform a public service. It must be and act in its own right upon the arena of trade and commerce and of human existence, free from the fetters of a collapsed institution which in the kaleidoscope of a changing world will soon be only a memory.

■ At the outset of new company's career it was repudiated by appellants' rejection of its offer to reinsure their policies in old company. Such action by appellants furnishes an additional reason why new company is not responsible for a breach of old company's contracts. Since it is a separate entity that came into being after old company's insolvency was declared, it is not liable for damages arising out of old company's breach resulting from such insolvency. Unless it is liable to appellants for breach of contract, there is no basis upon which it can be adjudged to owe interest to appellants upon the ''claims against the old company filed with the liquidator and finally allowed.'' There could be no such liability because no contract existed between appellants and new company.

In the foregoing discussion, the right of the former holders of noncancellable policies ultimately to collect interest on their claims as contemplated by article 14 (R agreement) has been constantly in view. The time and circumstances of enforcing such obligation and the assets out of which collection may be made are not pertinent to the issues here involved. Old company has assets which in due time may so fructify as to enable it to pay a portion or all of its indebtedness, including the claimed interest. (See *Greva* v. *Rainey, supra*.) But merely because of the latter's obligation to pay established claims with interest out of such assets, new company is not for that reason required to pay such interest which has accrued against old company since its insolvency was established.

The order is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied January 7, 1948, and the opinion was modified to read as above.

Appellants' petition for a hearing by the Supreme Court was denied February 16, 1948. Carter, J., voted for a hearing.