FILES, J.
 

 These are appeals from an order of the superior court instructing the Insurance Commissioner, as liquidator of the Pacific Mutual Life Insurance Company of California, regarding the payment of interest on certain claims. The claims in question are for the damages payable to those holders of noncancellable disability insurance policies who declined to accept reinsurance in the reorganized company. The questions are (1) whether these claims bear interest; (2) if so, when interest started to run; and (3) whether a payment designated as a full payment of principal stopped the further accrual of interest.
 

 On July 22, 1936, the Insurance Commissioner of the State of California, acting under an order of the superior court pursuant to Insurance Code, section 1011, took over the business and assets of the Pacific Mutual Life Insurance Company of California (hereinafter called the "old company”) on the ground that it was insolvent. The specific cause of the old company’s financial difficulties was that it had issued a large number of noncancellable disability policies (commonly
 
 *472
 
 referred to as non-can policies) at a premium rate inadequate to maintain proper reserves behind these policies. To rehabilitate the business a new corporation, called Pacific Mutual Life Insurance Company, was organized by the commissioner, who purchased its entire capital stock with assets of the old company. A “Rehabilitation and Reinsurance Agreement” was entered into between the commissioner and the new company, which provided that most of the assets of the old company would be transferred to the new company, and the latter agreed to assume the obligations of the former on all outstanding insurance except the non-can policies. The new company agreed to assume a limited obligation with respect to non-cán policies, and to create a special fund for the purpose of restoring the full benefits of the non-can insurance when and as the growth of the fund made it possible to do so. The superior court’s approval of this plan of rehabilitation was affirmed in
 
 Carpenter
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 10 Cal.2d 307 [74 P.2d 761], and
 
 Neblett
 
 v.
 
 Carpenter,
 
 305 U.S. 297 [59 S.Ct. 170, 83 L.Ed. 182].
 

 On February 2, 1937, an order of the superior court was made for the liquidation of the old company and appointing the Insurance Commissioner as liquidator. The order fixed the rights of all persons interested in the assets as of July 22, 1936, the date of the seizure. This order was affirmed in
 
 Carpenter
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 13 Cal.2d 306 [89 P.2d 637].
 

 Policyholders and others having claims against the old company then had the option of doing business with the new company under the rehabilitation agreement or filing a claim for damages with the commissioner as liquidator of the old company. A notice to creditors was published, establishing November 6, 1937, as the last day for filing creditors’ claims under Insurance Code, section 1021. The claims of 4,895 claimants were allowed. Some of these (the number does not appear in the record) were holders of non-can policies who elected to claim damages against the assets of the old company rather than accept reinsurance under the rehabilitation plan. In allowing the claims of non-can policyholders who elected not to accept reinsurance, the commissioner adopted the following formula: He computed the amount of benefits which would have been paid (but for the insolvency) to policyholders of each age group as a class, based upon the experience of the company, and discounted these benefits to their present value as of July 22,1936, at 7 per cent simple interest;
 
 *473
 
 this total was divided among the policyholders in proportion to the amount of insurance held by each; and each policyholder’s share was then reduced by subtracting the present value as of July 22, 1936, of the premiums which that policyholder would have paid during the term of the policy. The resulting figure was the amount of damage allowed.
 

 Under Insurance Code, section 1032, a creditor whose claim is rejected by the commissioner may, within 30 days thereafter, apply to the superior court for an order to show cause why his claim should not be allowed.
 

 Two non-can policyholders, Manierre and Levine, each filed a timely petition in the superior court to compel the commissioner to allow his claim in a greater amount. Each had based his claim upon the alleged cost of obtaining comparable insurance in another company. The commissioner had rejected such portion of those claims as exceeded the amount allowable under his formula. The two petitions were heard together in the superior court. Manierre and Levine offered evidence of damage in accordance with their theory. Counsel for the commissioner did not offer any evidence, but explained to the court the theory on which the commissioner had acted. Counsel for the new company appeared and argued that the claims should not be allowed for any amount exceeding the unearned portion of the premium which had been paid in advance. On April 15,1941, the superior court made its orders denying the two petitions and approving the action of the commissioner in allowing the claims in the amount determined by his formula.
 

 Manierre and Levine appealed, and the Supreme Court affirmed in an opinion which discussed the various theories and concluded that the measure of damage used by the commissioner was correct.
 
 (Caminetti
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 23 Cal.2d 94 [142 P.2d 741].)
 

 It does not appear from any record before this court, or from the record in the
 
 Caminetti
 
 case, that any other claimant objected to the damage formula applied by the commissioner except one other claimant who joined with Manierre and later withdrew his objection.
 

 The rehabilitation agreement provided that the new company would, as funds became available, pay to the liquidator “an amount equal to the sum of all claims against the Old Company filed with the Liquidator and finally allowed.” The new company prospered and eventually became able to make this payment to the liquidator. On September 15, 1946, the
 
 *474
 
 commissioner mailed a check to each claimant for the principal amount of his allowed claim. Each cheek was accompanied by a letter from the commissioner which stated in part as follows:
 

 “It is intended that the within payment be applied to the extinction of the principal of the claim herein referred to, and not to any interest which may have accrued thereon; and you are directed to apply it accordingly. Tour acceptance of this payment shall not, however, be deemed to waive or release any claim you may have that interest has heretofore accrued on such claim, or to receive payment of such interest if it be finally determined that any such interest has accrued.
 

 “The question of whether interest accrues upon these claims and the sources of funds for the payment of such interest if due, is now being canvassed. If it is finally held that you are entitled to interest and that there are sources of funds for the payment thereof, further dividends will be paid in the future.”
 

 On September 3, 1946, the commissioner filed a suit for declaratory relief against the new company to construe the rehabilitation agreement. The purpose was to determine whether the new company was obligated to pay interest on the allowed claims. A group of claimants was allowed to appear and present their contention that the new company was obligated to pay interest. The superior court then gave judgment declaring that the liability of the new company was limited to the payment of sums equal to the principal amount of the claims, irrespective of whether or not the holders of such claims may be entitled to interest as against the liquidator or the old company. This judgment was affirmed.
 
 (Garrison
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 83 Cal.App.2d 1 [187 P.2d 893].)
 

 Eventually the new company was able to restore all of the benefits to the non-can policyholders who had accepted the reinsurance plan. The new company then was mutualized as contemplated in the rehabilitation agreement, and bought back its capital stock from the commissioner, as liquidator, for a price in excess of eight million dollars. This transaction was approved by a judgment which was affirmed.
 
 (Pacific Mutual Life Ins. Co.
 
 v.
 
 McConnell,
 
 44 Cal.2d 715 [285 P.2d 636].) When the commissioner received payment for the stock on July 28, 1959, he was for the first time in possession of funds sufficient to pay interest, if interest was owing, to the old company’s creditors.
 

 The commissioner then petitioned the superior court for
 
 *475
 
 instructions with respect to the payment of interest to claimants who had rejected the rehabilitation agreement and claimants whose claims were not based upon insurance policy obligations. The petition referred to the history of the insolvency proceedings and alleged the following additional facts:
 

 No payment has been made on any of the allowed claims except the payment made with the letter of September 15, 1946. Of the 4,895 claimants so paid, 1,387 did not cash their checks and have not been located. The commissioner now has funds which will probably be available to pay interest if interest is owed. However, no income taxes have been paid on the eight million dollars received for the stock. The commissioner has taken the position that no tax is due, but he cannot safely dispose of the funds until tax questions have been finally determined. Thus the commissioner desires that the question of interest be adjudicated, but that he not be required to make payment until after the tax questions are settled.
 

 The superior court issued an order to show cause, in response to which appearances were made by the State Controller, representing the 1,387 missing claimants, and attorneys representing a stockholders’ protective committee and the old company. Two other attorneys representing stockholders appeared at the hearing and talked. No pleading was filed by anyone which controverted any of the allegations of the commissioner’s petition. No evidence was offered on behalf of any party. After hearing the arguments of counsel the court made the order which is the subject of the present appeals. This order provides that interest shall be paid by the liquidator on all approved claims at the rate of 7 per cent per annum simple interest for the period from April 15, 1941 (the date of the superior court’s order dismissing Manierrc’s petition) to September 15, 1946 (the date of the payment of the principal). The order further provides that payment need not be made'until the liquidator has paid or established adequate reserves for all expenses of administration and taxes; and further that any moneys due to claimants who cannot be located be paid to the State Controller.
 

 The commissioner has appealed from this order for the purpose of obtaining an appellate court decision, but he maintains neutrality as to how the issues shall be decided. The old company, the controller, and two claimants, Neblett and Pearson, have taken separate appeals.
 

 Preliminarily, it is noted that the opinion of the trial judge,
 
 *476
 
 as well as his order, assumes that all of the claims are those of non-can policyholders. The briefs on appeal make the same assumption. This is contrary to the facts alleged in the commissioner’s petition. Since the record fails to disclose the nature and basis of any of the other types of claims, it is not possible to discuss them in this opinion. What will be said here applies only to claims of the non-can policyholders.
 

 Each of the appellants has hopefully pointed to language in some of the earlier
 
 Pacific Mutual
 
 eases as deciding the issue here. This ease is not that simple. Although the earlier decisions do establish certain relationships which are fundamental here, the questions in issue have not been decided.
 

 In
 
 Garrison
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 83 Cal.App.2d 1 [187 P.2d 893], where it was decided that the new company was not obligated to pay interest, the appellate court concluded its opinion with this statement (at p. 10):
 

 “In the foregoing discussion, the right of the former holders of noncancellable policies ultimately to collect interest on their claims as contemplated by article 14 (R agreement) has been constantly in view. The time and circumstances of enforcing such obligation and the assets out of which collection may be made are not pertinent to the issues here involved. Old company has assets which in due time may so fructify as to enable it to pay a portion or all of its indebtedness, including the claimed interest. (See
 
 Greva
 
 v.
 
 Rainey, supra
 
 [2 Cal.2d 338 (41 P.2d 328)].) But merely because of the latter’s obligation to pay established claims with interest out of such assets, new company is not for that reason required to pay such interest which has accrued against old company since its insolvency was established.”
 

 When that language was written the obligation of the old company to pay interest was not in issue. The action was one for declaratory relief, to determine whether the new company had undertaken, by the rehabilitation agreement, to pay interest. The stockholders of the old company were not separately represented. The decision was that the rehabilitation agreement (referred to as the “R agreement”) made the new company liable only for the principal amount of the claims finally allowed “irrespective of whether or not the holders of such claims may now or hereafter be entitled to interest upon such claims as against the liquidator or against The Pacific Mutual Life Insurance Company of California or its shareholders.” (83 Cal.App.2d at p. 4.)
 

 The reference in the last paragraph of the
 
 Garrison
 
 opinion
 
 *477
 
 to “article 14 (R agreement) ” is clearly inapposite. Article 14 sets forth conditions under which the new company will pay, with 3% per cent interest, benefits to those non-can policyholders who accepted reinsurance in the new company. Article 14 of the R agreement has nothing whatever to do with the non-can policyholders who rejected reinsurance and filed claims with the liquidator. Moreover, there is nothing in any part of the R agreement which bears on the question of whether the nonconsenting policyholders (the claimants here) are entitled to interest. If the claimants are entitled to interest out of the estate in the liquidator’s hands, it is not because of anything in the R agreement.
 

 The
 
 Garrison
 
 case does have another significance worth noting. Instead of a brief on appeal in that ease the commissioner submitted to the appellate court an opinion of his special counsel dated March 29, 1946, analyzing the liability of both companies for interest. In that opinion counsel concluded that interest would be payable as a matter of law out of the funds in the hands of the liquidator, when and if sufficient funds existed, but that there was no such liability on the new company under the R agreement. The attorney who signed this opinion had served the commissioner as special counsel from the time of the seizure, and his analysis of the applicable law is of interest as a reflection of the legal theories upon which the commissioner established his plan of rehabilitation and liquidation. The opinion of the appellate' court in the
 
 Garrison
 
 case follows generally the opinion of the commissioner’s counsel with respect to the interpretation of the R agreement, and the appellate court’s assumption that interest will run on claims payable by the liquidator doubtless arose from the same source.
 

 1.
 
 Are the Claims Interest-bearing Obligationsf
 

 Civil Code, section 3287, provides: “Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. ...”
 

 Our task is to apply that statutory standard to the claims of the non-can policyholders. The nature of these claims was discussed in
 
 Caminetti
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 23 Cal.2d 94 [142 P.2d 741], where the Supreme Court described
 
 *478
 
 them as “somewhat analogous to a breach by anticipatory repudiation.’’ (23 Cal.2d at p. 104.) This breach, occurring when the old company ceased to do business, gave rise to an immediate claim for money damages.
 

 The damages allowed by the commissioner for repudiation of the non-can policies were arrived at by calculation. The commissioner calculated, on the basis of the company’s experience, mortality tables and other data used by actuaries, the amount which would have become payable to policyholders as a class (less premiums and discounted to present value) and prorated it among the individual claimants. Although the amount of the damages was made certain by calculation, the calculation was not intended to measure what any claimant would have been entitled to under his individual contract. The damage allowed was not the amount promised in the contract, nor was it based entirely upon the terms of the contract. The old company therefore contends that this type of calculation, based as it is on noncontractual elements, is not within the meaning of section 3287. It agrees that the early rule of
 
 Brady
 
 v.
 
 Wilcoxson
 
 (1872) 44 Cal. 239, that interest is permitted only when the amount due could be ascertained from the face of the contract, has been modified to include damages that could be made certain by reference to well established market values. The old company urges that interest is not recoverable unless the damages can be made certain by calculation either from the face of the contract or from well established market values; and that the facts used by the commissioner cannot be considered “established market values. ’ ’
 

 Our analysis of the reasons behind the law governing the recovery of interest leads us to conclude that the “calculation’’ referred to in Civil Code, section 3287, should not be so limited.
 

 The underlying theory upon which interest is recovered (absent an express contract to pay interest) is that the creditor is damaged by the withholding of his money, and that an allowance of interest is just compensation for such damage. This theory is subject to the qualification that where the debtor cannot know what sum he owes, there is no default for not paying. Discussion of these principles is found in
 
 Cox
 
 v. McLaughlin, 76 Cal. 60 [18 P. 100, 9 Am.St.Rep. 164];
 
 Courteney
 
 v.
 
 Standard Box Co.,
 
 16 Cal.App. 600 [117 P. 778];
 
 Lineman
 
 v.
 
 Schmid,
 
 32 Cal.2d 204 [195 P.2d 408, 4 A.L.R.2d 1380];
 
 Chase
 
 v.
 
 National Indem. Co.,
 
 129 Cal.App.2d 853, 865 [278 P.2d 68], and
 
 Maurice L. Bein, Inc.
 
 v.
 
 *479
 

 Housing Authority,
 
 157 Cal.App.2d 670, 686 [321 P.2d 753]. (See Comment, 5 U.C.L.A. L. Rev. 262.) It was explained in the
 
 Cox
 
 case that certain "unliquidated” claims do not bear interest because "The damages in such cases are an uncertain quantity, depending upon no fixed standard, are referred to the wide discretion of a jury, and can never be made certain except by accord or verdict. As to such damages there can be no default, and hence the initial point at which to fix the starting of interest is wanting.” (76 Cal. at pp. 67-68.)
 

 In the eases where damages are based upon the value of goods or services, interest is allowed from the date the cause of action arises if the goods or services in question have a well recognized or readily ascertained market value.
 
 (Koyer
 
 v.
 
 Detroit F. & M. Ins. Co.,
 
 9 Cal.2d 336, 345 [70 P.2d 927];
 
 Chase
 
 v.
 
 National Indem. Co.,
 
 129 Cal.App.2d 853, 865 [278 P.2d 68];
 
 Courteney
 
 v.
 
 Standard Box Co.,
 
 16 Cal.App. 600, 613-615 [117 P. 778].) On the other hand, if established market prices or values are lacking, and the damages must be determined by the court or jury on conflicting evidence, interest is not allowed before judgment.
 
 (Lineman
 
 v.
 
 Schmid,
 
 32 Cal.2d 204, 208-212 [195 P.2d 408, 4 A.L.R.2d 1380];
 
 Cox
 
 v.
 
 McLaughlin,
 
 76 Cal. 60 [18 P. 100, 9 Am.St.Rep. 164];
 
 Parker
 
 v.
 
 Maier Brewing Co.,
 
 180 Cal.App.2d 630, 634 [4 Cal.Rptr. 825].)
 

 The crucial question is not how the damages are calculated, but whether the debtor is able to compute them. Further confirmation of this principle is found in
 
 Gray
 
 v.
 
 Bekins,
 
 186 Cal. 389 [199 P. 767], where a claim for the value of services was held to bear interest because the defendant, by his answer, admitted the value to be as alleged. The Supreme Court said: ‘‘ True the action here is one in
 
 quantum meruit,
 
 but even so, if the exact amount of the indebtedness due the plaintiffs was known to and admitted by the defendants, the parties to be charged, the reason for refusing interest until the amount due is made certain by evidence no longer obtains.” (186 Cal. at p. 399.)
 

 In the present ease it is significant that the debtor (i.e., the liquidator administering the assets of the old company) calculated the damages. The calculation was based upon facts which existed as of the date of the breach. The existence of these facts has never been disputed. When the measure of damage was tested in court no evidence was taken. The court merely decided that the method of computation was
 
 *480
 
 a proper method as a matter of law. The uncertainty which existed prior to the Supreme Court’s decision in
 
 Caminetti
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 23 Cal.2d 94 [142 P.2d 741], was an uncertainty as to the law, not as to the facts. Anyone knowing the law and the undisputed facts could have computed the damage on the day the contract was breached. Thus under the test which our courts have recognized since
 
 Cox
 
 v.
 
 McLaughlin,
 
 76 Cal. 60 [18 P. 100, 9 Am.St.Rep. 164], the debtor should not escape interest from the date when the cause of action arose. The elements used by the liquidator in computing damages were not “market prices,” but they were elements which are recognized in the world of commerce. The formula was one which had been approved by the courts of New York and Pennsylvania in allowing claims on life insurance policies. What the liquidator did was analogous to computing damage from market prices. It follows that the amounts of claims here are “capable of being made certain by calculation” within the meaning of Civil Code, section 3287.
 

 2.
 
 When does Interest Start f
 

 The question of whether the pendency of insolvency proceedings suspends the accrual of interest has been decided in
 
 Greva
 
 v.
 
 Rainey,
 
 2 Cal.2d 338 [41 P.2d 328]. (Accord:
 
 People
 
 v.
 
 California Safe Deposit & Trust Co.,
 
 34 Cal.App. 269 [167 P. 181].) These cases establish that interest accrues on the money obligations of an insolvent bank during the period of liquidation. The
 
 Greva
 
 ease holds that, for the purpose of maintaining equality between creditors, no interest accruing during administration shall be paid to any creditor until the principal amount has been paid to every creditor. Thus in any case where the assets are insufficient to pay more than the principal amount of all claims, the first dividends to be paid will disregard interest and will be designated as payments of principal. This rule has been applied to the liquidation of a building and loan association
 
 (In re Pacific Coast Building-Loan Assn.,
 
 15 Cal.2d 134 [99 P.2d 251]) and there appears to be no reason not to apply the same rule to the liquidation of an insurance company.
 

 In the present case the order appealed from provides that interest commences to run from April 15, 1941, which was the date of the order dismissing the petition of Manierre and Levine. The theory of the trial judge was that the claims of the non-can policyholders were unliquidated claims within the meaning of Insurance Code, section 1025, and that such claims may not share in distribution until such claims have
 
 *481
 
 been “determined, proved and allowed.” He concluded that the dismissal of the petitions of Manierre and Levine was the event by which all of the non-can claims were determined, proved and allowed.
 

 We cannot agree that the claims of the non-can policyholders were unliquidated or undetermined claims within the meaning of Insurance Code, section 1025. The type of claim referred to in that section requires something more than mere calculation and approval by the liquidator before it can be allowed. A claim may be undetermined because it is contingent, or because judicial proceedings are necessary to establish the amount. The claims here arose on July 22, 1936, when the contracts were repudiated, and the amount of the damage sustained on that date was determined by a process of calculation, not by resort to judicial proceedings.
 

 Furthermore, the Manierre and Levine proceedings did not adjudicate the claim of any other policyholder, except in the sense that the Supreme Court’s opinion declared the applicable law. Manierre and Levine did not purport to act on behalf of any other claimants. The date when their petitions were dismissed had no significance to any other claimant. From a procedural standpoint the amounts of the other claims were determined when the liquidator allowed them, and the claimants lost their right to contest with the expiration of 30 days after written notice. (Ins. Code, § 1032.)
 

 It is purely fortuitous that two of the 4,895 claimants saw fit to seek judicial review of the liquidator’s action on their claims. Had these two men remained silent the legal effect would have been the same. The legal obligation to pay interest cannot depend on whether or when two claimants chose to make an unsuccessful attack upon the liquidator’s action. The theory upon which interest is allowed at all in this ease seems to compel the holding that interest runs from the date of the breach.
 

 The rate of interest to be allowed is not in dispute. The 7 per cent rate established by article XX, section 22, of the state Constitution is the measure of damages for the detention of money.
 
 (Gray
 
 v.
 
 American Surety Co.,
 
 129 Cal.App.2d 471 [277 P.2d 436].)
 

 3.
 
 Did the Payment of September 15, 1946, Stop Further Accrual of Interest?
 

 The old company argues that since the payment made on September 15, 1946, was designated as principal, interest can
 
 *482
 
 not under any circumstances accrue thereafter. The old company argues further that by accepting the payment which was clearly designated as a payment of principal in full, the creditors have waived their interest, or at least have waived any right to interest accruing subsequently. The creditor appellants say that notwithstanding the liquidator’s statement that he was paying principal, the payment should be applied first to interest accrued to that date, and the balance applied to principal, leaving a balance of principal which continues to bear interest.
 

 The contention that interest was waived may be disposed of readily. There is no reason to believe that any creditor intended to relinquish any of his rights to share in this estate. The commissioner’s letter of September 15, 1946, stated that acceptance of the principal would not be a waiver of interest. It is argued that the commissioner had no authority to make such a statement. By the same token, he had no authority to designate as “principal” any payment which in law should be credited to interest. The letter written by the commissioner cannot be construed as though it were a tender made between parties dealing at arm’s length. The commissioner acted as a fiduciary administering a fund impartially for the benefit of the persons entitled thereto, and the effect of the distribution is the effect which the law gives to it, regardless of what the commissioner called it.
 

 The money paid was owing in any event, either as principal or as part interest and part principal. The rule of
 
 Greva
 
 v.
 
 Rainey,
 
 2 Cal.2d 338 [41 P.2d 328], that dividends measured by principal alone will be paid until each creditor has received the amount of his principal, affords a reason for designating the first dividend as principal, but this designation should have no bearing on how interest shall eventually be calculated. (See
 
 Stein
 
 v.
 
 Delamo,
 
 121 F.2d 975;
 
 Ohio Sav. Bank & Trust Co.
 
 v.
 
 Willys Corp.,
 
 8 F.2d 463 [44 A.L.R. 1162]; Hanson,
 
 Effect of Insolvency Proceedings on Creditor’s Right to Interest,
 
 32 Mich. L. Rev. 1069.)
 

 Civil Code, section 3290, provides: “Accepting payment of the whole principal, as such, waives all claim to interest.” This statute is a rule of construction to be applied between parties dealing at arm’s length, where their agreement is to be inferred from the fact that principal is tendered and accepted. This rule cannot be invoked, however, where the conditions of payment are such that the creditor- has no opportunity to assert his claim for interest at the time of
 
 *483
 
 payment.
 
 (Conner
 
 v.
 
 Bank of Bakersfield,
 
 183 Cal. 199, 205 [190 P. 801].)
 

 The old company also argues that interest should be deemed waived by any creditor who did not specifically demand it in his written claim. No decision or statute imposing so strict a rule has been cited, and no reason for it appears. Of the 4,895 claims here, 3,998 are for amounts under $100 each. It is not to be expected that claims of this amount will be drafted with a lawyer’s regard for detail. If the claimant meets the requirements of the Insurance Code, and his claim is allowed for the amount due as of the date fixed by the order for liquidation, interest accrues as a matter of law.
 

 Having determined that the claimants did not waive any right they may have to interest, and that the liquidator did not purport to, and indeed had no authority to deprive them of whatever the law allows, we now pass to the question of how the law calculates the interest after a payment of less than the whole amount due.
 

 In
 
 Backus
 
 v.
 
 Minor
 
 (1853) 3 Cal. 231, at 233, the Supreme Court said:
 

 “Upon a money demand bearing interest, on which have been made payments after maturity, the proper method of computing the interest, is stated by Chancellor Kent, in
 
 Connecticut
 
 v.
 
 Jackson,
 
 1 John. Ch. R. 13. ‘The rule for casting interest,’ he says, ‘when partial payments have been made, is to apply the payment in the. first place to the discharge of the interest then due; if the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is to be computed on the balance of the principal remaining. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal, but interest continues on the former principal, until the period when the payments, taken together, exceed the interest due.’ ”
 

 In the
 
 Backus
 
 case, however, the court affirmed a judgment using a different method of computation because the parties themselves had adopted a different method for their dealings, as established by three or four stated accounts over a two-year period.
 

 The rule quoted from Chancellor Kent has been the prevailing rule throughout the United States.
 
 (Ohio Sav. Bank & Trust Co.
 
 v.
 
 Willys Corp.,
 
 8 F.2d 463 [44 A.L.R. 1162]; 30 Am, Jur., Interest, § 49; 47 C.J.S., Interest, § 66.) The
 
 *484
 
 same rule applies whether interest arises from an express contract or as damages.
 
 (Story
 
 v.
 
 Livingston,
 
 38 U.S. (13 Pet.) 359, 371 [10 L.Ed. 200, 206].)
 

 We are aware that an analysis of the facts in
 
 Conner
 
 v.
 
 Bank of Bakersfield,
 
 183 Cal. 199 [190 P. 801], and
 
 Estate of Hubbell,
 
 216 Cal. 574 [15 P.2d 503], shows that in each a partial payment was applied to principal, contrary to the general rule. Neither of these opinions discussed the question of how interest should be calculated. Neither should be construed as authority rejecting the rule which was recognized by our Supreme Court in 1853 and is generally applied elsewhere in this country. Cases are not authority for questions not presented or considered.
 
 (General Motors Accept. Corp.
 
 v.
 
 Kyle,
 
 54 Cal.2d 101, 114 [4 Cal.Rptr. 496, 351 P.2d 768];
 
 Fricker
 
 v.
 
 Uddo & Taormina Co.,
 
 48 Cal.2d 696, 701 [312 P.2d 1085]
 
 ; Meehan
 
 v.
 
 Hopps,
 
 45 Cal.2d 213, 217 [288 P.2d 267];
 
 Worthley
 
 v.
 
 Worthley,
 
 44 Cal.2d 465, 472 [283 P.2d 19].)
 

 We conclude, therefore, that under the law of this state, consistent with the general rule, the payment made September 15, 1946, should be applied first to the payment of interest accrued to that date, and the surplus applied to principal, leaving a balance of principal which will continue to bear interest until further payment is made or tendered.
 

 The order made in the superior court provides that the missing claimants shall not receive any greater amount of interest than those who actually received their September 15, 1946, dividend. This provision has not been challenged by any of the appellants. The requirement that the moneys due to the missing claimants must eventually go to the State Controller, rather than to the stockholders, seems clearly required by statute. (Ins. Code, § 1056.5; Code Civ. Proc., §§ 1500-1527.) We need not and do not decide on this appeal how the escheat procedure in the Insurance Code is to be integrated with the newer provisions in the Code of Civil Procedure regarding unclaimed property.
 

 The order appealed from must be modified by deleting the first sentence of paragraph 4 of section A thereof and substituting the following:
 

 “Interest shall be computed on the amount of each allowed claim from July 22, 1936. The amount paid or tendered on September 15,1946 (being a sum equal to the principal amount of each claim), shall be applied first to interest accrued to that date and the surplus as a partial payment of the prin
 
 *485
 
 eipal; and the unpaid balance of principal shall continue to bear interest to the date when the liquidator makes or tenders further payment. ’ ’
 

 The order must be further modified by adding the following: “This order applies only to claims for damages sustained by holders of noncancellable disability policies.”
 

 As so modified, the order is affirmed.
 

 The matter of the petition for instructions is remanded to the superior court for further proceedings upon those claims other than claims for damages sustained by holders of noneancellable disability policies.
 

 The State Controller and the appellants Neblett and Pearson are the prevailing parties and are entitled to recover costs against the old company.
 

 Shinn, P. J., and Ford, J., concurred.
 

 A petition for a rehearing was denied July 31, 1962, and the petition of defendant and appellant for a hearing by the Supreme Court was denied August 31, 1962.